The **WEST VIRGINIA HIGHLANDS CONSERVANCY**, a non-profit corporation, Appellee,

v.

**ISLAND CREEK COAL COMPANY**, a corporation, and Frederick Dorrell, Appellants.

No. 15028.

United States Court of Appeals, Fourth Circuit.

Argued March 4, 1971.

Decided April 6, 1971.

Eva R. Datz, Atty., Dept. of Justice (Walter Kiechel, Jr., Acting Asst. Atty. Gen., Shiro Kashiwa, Asst. Atty. Gen., and Edmund B. Clark, Atty. Dept. of Justice, on brief), for appellants.

James W. Moorman, Washington, D. C. (Willis O. Shay, and Steptoe & Johnson, Clarksburg, W. Va., and Frederick R. Anderson, on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and WINTER and BUTZNER, Circuit Judges.

WINTER, Circuit Judge:

West Virginia Highlands Conservancy (Conservancy) sought a preliminary and permanent injunction against Frederick Dorrell, Forest Supervisor of the Monongahela National Forest, and Island Creek Coal Company (Island Creek) to halt certain mining and timber-cutting activities in the Otter Creek area of the Monongahela National Forest in order to preserve the wilderness characteristics of that area. Pending trial on the issue of permanent relief, the district judge granted a preliminary injunction, and both parties appealed. Island Creek, however, later dismissed its appeal, but Dorrell has proceeded, challenging the preliminary injunction on the grounds that Conservancy lacks standing to bring this action and that the district judge abused his discretion in granting interlocutory relief. We affirm.

I

Conservancy is a non-profit membership corporation dedicated to preserving natural, scenic and historic areas in the West Virginia highlands. It has over two hundred members who reside principally in West Virginia, Pennsylvania and the District of Columbia. It publishes a news letter and sponsors field trips for the pleasure and education of visitors to the highlands. One of its main concerns is the protection of an 18,000-acre area within the Monongahela National Forest known as the Otter Creek Basin. It has prepared a detailed study of the Ottor Creek drainage area, sponsored hikes along Otter Creek and organized meetings to discuss the future of Otter Creek.

Sometime in January, 1970, Dorrell, acting in his capacity as Forest Supervisor, prepared and submitted to the Regional Forester a plan for the administration of the Otter Creek area under the Multiple Use-Sustained Yield Act of 1960. 16 U.S.C.A. §§ 528, et seq. The plan provided that "a sustained yield of timber will be provided where compatible with the primary recreation, wildlife, and fish objectives." Opposed to any change in the wilderness characteristics of the Otter Creek area, Conservancy, pursuant to forestry regulations, filed a petition and appeal with the Regional Forester, challenging Dorrell's plan. In

this petition, Conservancy alleged that Dorrell had exceeded his authority under the Multiple Use-Sustained Yield Act in certain aspects of his plan. Further, Conservancy strongly recommended that, as an alternative to Multiple Use administration, Otter Creek should be set aside as a study area for inclusion in the Wilderness System pursuant to provisions of the Wilderness Act of 1964. 16 U.S.C.A. §§ 1131, et seq. The Regional Forester subsequently denied the petition and appeal, but a further appeal to the Chief Forester is presently pending.

While Conservancy's petition was pending before the Regional Forester, Island Creek, allegedly the owner of mineral rights under the surface of the Otter Creek area, received permission from Dorrell to make some test drillings in the area. When Island Creek began building access roads for this purpose, Conservancy instituted this suit. In the district court Conservancy contended that Dorrell had no authority to allow Island Creek to proceed because the latter's mineral rights do not include the right to build such access roads. Further, Conservancy alleged that no mining or timber-cutting activities could be undertaken in the area without the submission of an "environmental impact statement," claimed to be required by § 102(2) (C) of the National Environmental Policy Act of 1969. 42 U.S.C.A. § 4332(2) (C). And finally, Conservancy alleged that Dorrell should not be permitted to take any action with respect to Otter Creek which was inconsistent with its wilderness characteristics until Conservancy's suggestion in this regard, advanced in the petition before the Regional Forester, had been finally determined. All of these issues await resolution in the district court.

## II

Before us Dorrell contends first that Conservancy lacked standing to maintain an action challenging the administration of the Otter Creek area.

Under recent decisions of the Supreme Court, standing to challenge an administrative decision is present when the plaintiff alleges injury in fact and is seeking to protect an interest within the zone of interests protected by the statute or constitutional guarantee in question. Association of Data Processing Service Organizations v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970).[1] Here, Conservancy alleged injury in terms of aesthetic, conservational and recreational values, injury which is generally recognized as sufficient to confer standing. Environmental Defense Fund, Inc. v. Hardin, 138 U.S.App.D.C. 391, 428 F.2d 1093 (1970); Citizens Committee for Hudson Valley v. Volpe, 425 F.2d 97 (2 Cir. 1970), cert. den., 400 U.S. 949, 91 S.Ct. 237, 27 L.Ed.2d 256 (1970); Scenic Hudson Preservation Conference v. FPC, 354 F.2d 608 (2 Cir. 1965), cert. den. Consolidated Edison Co. of New York v. Scenic Hudson Preservation Conference, 384 U.S. 941, 86 S.Ct. 1462, 16 L.Ed.2d 540 (1966). Additionally, it is clear that Conservancy sought to protect the same conservational interests with which the National Environmental Policy Act and the Wilderness Act are concerned.

We are aware that the Ninth Circuit recently held that Sierra Club, a non-profit membership corporation having approximately 78,000 members nationally, which has taken a special interest in the conservation and sound maintenance of the national parks and forests, particularly lands on the slopes of the Sierra Nevada mountains, lacked standing to challenge a decision of the Secretary of the Interior to allow commercial development of a portion of Sequoia National Park. Sierra Club v. Hickel, 433 F.2d 24 (9 Cir. 1970). The court's conclusion

1. For a debate over the rationale underlying this second element of standing, see Davis, The Liberalized Law of Standing, 37 U.Chi.L.Rev. 450 (1970), and Jaffe, Standing Again, 84 Harv.L.Rev. 633 (1970).

was that neither the club nor its members possessed a sufficient interest for standing to be conferred because neither the club nor its members would be affected by the actions complained of other than through personal displeasure or distaste. It is significant that the Ninth Circuit distinguished Citizens Committee for Hudson Valley v. Volpe, *supra*, and Parker v. United States, 307 F.Supp. 685 (D.Colo.1969), from the case it was considering, upon the ground that "[i]n both of these cases, * * * the Sierra Club was joined by local conservationist organizations made up of local residents and users of the area affected by the administrative action." 433 F.2d at 33.

■ The decision in *Sierra Club* would thus seem to exclude a holding that Conservancy lacks standing because, as we have stated, Conservancy and its members have a special interest in the Otter Creek area. The area is one of the objects of their principal activities; they use it extensively, and they have studied it in detail. Their interest and the injury they would suffer are much more particularized and specific than those of Sierra Club and its members in a portion of Sequoia National Park. We think our case falls outside of the doctrine of *Sierra Club*, and, consistent with the other authorities we have cited, we conclude that Conservancy has standing to maintain this action.[2]

### III

We turn next to Dorrell's contention that the district judge abused his discretion in granting a preliminary injunction.

The decision to grant a preliminary injunction is discretionary with the district judge and may not be set aside on appeal unless an abuse of discretion is shown. Singleton v. Anson County Board of Education, 387 F.2d 349 (4 Cir. 1967); Meiselman v. Paramount Film Distributing Corp., 180 F.2d 94 (4 Cir. 1950); Sinclair Refining Co. v. Midland Oil Co., 55 F.2d 42 (4 Cir. 1932). The factors to be considered by the district judge have long been settled in this circuit:

> [I]t is sufficient if the court is satisfied that there is a probable right and a probable danger and that the right may be defeated, unless the injunction is issued, and considerable weight is given to the need of protection to the plaintiff as contrasted with the probable injury to the defendant * * *

Sinclair Refining Co. v. Midland Oil Co., 55 F.2d at 45.

■ As the above quotation indicates, it is not necessary that Conservancy demonstrate an absolute right to the relief it seeks in order to sustain the issuance of this preliminary injunction; it need establish only "probable right." It is apparent that Conservancy has raised substantial issues concerning the application of recent federal conservationist legislation to the administration of the National Forest system. Such issues are of great current public concern. They should be fully developed and litigated at the trial level in order to insure their proper resolution. It is at that stage that the various defenses raised by Dorrell should be asserted. While we express no opinion on these questions on their merits, we can say that their resolution is not immediately apparent. That is enough to say that Conservancy has not embarked on frivolous litigation, and thus interlocutory relief is not improper if Conservancy can also show a need for protection which outweighs any probable injury to Dorrell.

2. The Supreme Court has granted certiorari in the *Sierra Club* case (400 U.S. 907, 91 S.Ct. 870, 27 L.Ed.2d 805, February 22, 1971), making reliance upon it a questionable proposition for the present. The Supreme Court has also recently decided a case involving a challenge of several conservationist groups to a decision of the Secretary of the Interior in which the plaintiffs were afforded relief without any mention of the issue of standing. Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

Dorrell did not show that he would suffer more than negligible harm as a result of having to delay timber-cutting in Otter Creek until the issues raised in this litigation could be decided. After a hearing at which evidence was offered as to potential harm as a result of the injunction, the district judge determined that Conservancy need post only a $100 bond to protect sufficiently *both* defendants. Manifestly, Island Creek would be the party upon which the greater part of any loss would fall. Island Creek has elected not to press its right to appeal the grant of the preliminary injunction and thus has demonstrated its own evaluation of the impact of the preliminary injunction on it. In contrast to the possible negligible harm to Dorrell, Conservancy's position with respect to the wilderness characteristics of Otter Creek may be jeopardized by road building in the area (see 16 U.S.C.A. § 1132(c)) even if Island Creek's test borings should determine the absence of minerals warranting further exploitation.

The public interest is also a relevant consideration. Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944); Huard-Steinheiser, Inc. v. Henry, 280 F.2d 79 (6 Cir. 1960). Usually the public interest comes into play when an injunction is sought to restrain enforcement of a statute or a regulation designed to further the public interest, and then it is sometimes concluded that a private party must suffer the risk of irreparable injury rather than to restrain the enforcement of that which, although it may be later determined to be invalid, is designed to further the public good. Here, however, the special interest of Conservancy aligns it with the public interest. It may be true, as Dorrell argues, that "a tree once cut down does not grow back. But others can be planted." The argument overlooks the fact that restoration of what the Wilderness Act of 1964 and other enactments seek to protect may not be achievable for several generations.

The district judge did not abuse his discretion in issuing the preliminary injunction. In deference to the position of the defendants, however, we suggest that the district court proceed to a final determination on the merits as expeditiously as practicable.

Affirmed.