**CONSERVATION COUNCIL OF NORTH CAROLINA et al., Appellants,**

v.

**Col. Albert C. COSTANZO, Wilmington District Engineer, Corps of Engineers, U. S. Army, et al., Appellees.**

No. 74–1881.

United States Court of Appeals, Fourth Circuit.

Argued Sept. 4, 1974.

Decided Nov. 8, 1974.

**500**

Thomas J. Schoenbaum, Chapel Hill, N.C., and Norman B. Smith, Greensboro, N.C. (Smith, Carrington, Patterson, Follin & Curtis, Greensboro, N.C., on brief), for appellants.

David A. Nash, Wilmington, N.C. (Hogue, Hill, Jones, Nash & Lynch, Wilmington, N.C., on brief), for appellee Carolina Cape Fear Corp.

Joseph W. Dean, Asst. U. S. Atty. (Thomas P. McNamara, U. S. Atty., on brief), for appellees.

Norton F. Tennille, Jr., Washington, D.C. (Richard J. Wertheimer and Arnold & Porter, Washington, D. C., on brief), for amici curiae.

Before HAYNSWORTH, Chief Judge, and RUSSELL and WIDENER, Circuit Judges.

PER CURIAM:

Conservation Council of North Carolina [1] sought a preliminary injunction restraining Carolina Cape Fear Corporation from further construction of a marina on Bald Head Island and requiring Constanzo, District Engineer of the Army Corps of Engineers, to prepare and file a detailed environmental impact statement as required by 42 U.S. C. § 4332(2)(C).

Bald Head Island is located in the Atlantic Ocean at the mouth of the Cape Fear River and comprises approximately 12,000 acres, 9,000 of which are described as either submerged lands and/or high marsh. In 1970 the island was purchased by Carolina Cape Fear Corporation for development as a residential resort community. To date, development includes a golf course, an inn, several homes and numerous road beds. Pivotal in the overall development of the island is a plan to construct a marina to furnish water access to the resort community. It is over the construction of the marina that the present dispute arises.

To complete the marina, which is to be built entirely on high ground, the Corporation must dredge a channel into the Cape Fear River below the mean high water mark. This dredging, representing only two percent of the total construction, requires a permit from the Corps of Engineers under Section 10 of the Rivers and Harbors Act of 1899, 33 U.S.C. § 403 (1970). Upon the Corporation's application for a permit accompanied by its own Environmental Assessment of the proposed project, the Corps solicited public comment, including comment from various state and federal agencies. The response was overwhelmingly in favor of the permit's issuance, save for opposition from several conservationists numbering among them the plaintiffs in this action. The Corporation, in its plans, had not been wholly oblivious to environmental concerns. In fact, it had made numerous concessions in the construction plans, evidencing its concern in this regard, including strict erosion controls, limitations on dredge-spoil fill areas, guarantees to leave 400 acres of highland marine forest in its natural state, and, not least of all, a grant by quitclaim of 9,000 acres of marshes and lowlands to the State of North Carolina.[2]

---

1. Conservation Council of North Carolina, joined by the local chapter of plaintiff-intervenor Sierra Club, are voluntary unincorporated associations composed of citizens of North Carolina dedicated to the conservation and protection of North Carolina's seacoast.

Four individual members of the Conservation Council are named as plaintiffs, each alleging individual injury to a prior recreational use of the island.

2. The relinquishment of the 9,000 acres was made a condition for granting the permit.

On May 24, 1974 the District Engineer issued a permit under 33 U.S.C. § 403, authorizing the Corporation to dredge an access channel to its marina. The District Engineer's written findings concluded that the revised project for marina construction gave proper consideration to public resources in the area and that the issuance of the permit did not constitute a major federal action "significantly affecting the quality of the human environment," 42 U.S.C. § 4332(2)(c), thus not requiring a detailed environmental impact statement.

On June 5, 1974, this action was filed by the plaintiffs challenging the District Engineer's decision. Plaintiffs additionally sought to enjoin construction under the Federal Water Pollution Control Act, 33 U.S.C. § 1311(a) (1972), asserting that the dumping of dredge spoil on salt meadows near the marina site required a Corps of Engineers' permit even though the area was above the mean high water mark. After a full hearing, the District Court denied plaintiffs' motion for a preliminary injunction and dismissed the action on the grounds that the plaintiffs had failed to meet the standing requirement of Section 10 of the Administrative Procedure Act, 5 U.S.C. § 702.

On July 24, 1974, the District Court denied plaintiffs' motion for an injunction pending appeal. On July 26, 1974 plaintiffs moved this Court, pursuant to Rule 8, Federal Rules of Appellate Procedure, for an injunction pending appeal. After hearing oral argument on the motion, the Honorable J. Braxton Craven, Jr. granted a limited injunction pending appeal enjoining defendants from opening any channel between the Cape Fear River and the site of the proposed marina, but otherwise leaving

defendants free to continue their construction.

I.

■ . Standing under Section 10 of the Administrative Procedure Act, 5 U.S.C. § 702, exists only when a plaintiff can satisfactorily demonstrate that the agency action complained of will result in an injury in fact and that the injury is to an interest "arguably within the zone of interests to be protected" by the statute in question. Data Processing Service v. Camp, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970); Barlow v. Collins, 397 U.S. 159, 164, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970). Directly addressing the injury in fact question in an environmental context, the Supreme Court, in Sierra Club v. Morton, 405 U.S. 727, 735, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), recognized aesthetic and environmental concerns as cognizable interests within the meaning of the statutory language. Mere special interest by a plaintiff in the environment is not, however, sufficient to confer standing as a person "adversely affected" or "aggrieved"; a plaintiff must allege an individualized interest at stake which would place him among the injured. Id. at 738–740, 90 S.Ct. 1361. The claimed injury need not be great or substantial; an "identifiable trifle", if actual and genuine, gives rise to standing. United States v. SCRAP, 412 U.S. 669, 687–689, n. 14, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973).

■ In this case, plaintiffs seek to distinguish themselves as having a direct stake in the outcome of the litigation by allegations of recreational uses of Bald Head Island.[3] Unlike the claims in Sierra Club and SCRAP which in-

It is only through the issuance of the permit that the public will acquire any undisputed right to the lowland areas of Bald Head Island.

3. Plaintiffs alleged and the District Court found that the four individually named plaintiffs had previously made use of the privately owned highland areas. One plaintiff, a bi-

ology teacher, had on occasion taken her classes to the island for study and educational purposes; other plaintiffs had allegedly either fished "at Bald Head Island," camped on the highlands, or engaged in bird watching there. Members of the Sierra Club had twice, with the express authorization of the defendant Corporation, made field trips to the island.

volved recreational uses of national parks, these plaintiffs assert prior uses of the privately owned highland areas. To the extent that standing is predicated upon plaintiffs' recreational use as either a licensee or a trespasser, this Court finds little difficulty in holding that they have suffered no injury due to any impairment of their use of the highlands. There is no indication that Carolina Cape Fear Corporation will permit a continuation of such use and without the possibility of future use, the challenged construction cannot harm the plaintiffs.

Plaintiffs also claim, as a matter of right, use of the area of the island below the mean high water mark, or at least a right to travel through or otherwise use the navigable portions of the submerged land. Because the allegations and findings below are too general to permit a determination of what use, if any, is made of these areas, we are unable to reach this question. Although the activities alleged in the complaint seem typically related to use of the privately owned highlands, plaintiffs may be able to demonstrate a prior legitimate, nonpermissive use of certain lowland areas and that the proposed development will injure their continued enjoyment of those public areas. Accordingly, we remand to the District Court for further hearings on these questions.

## II.

■ The decision to grant a preliminary injunction is discretionary with the District Judge and may not be set aside on appeal unless an abuse of discretion is shown. West Virginia Highlands Conserv. v. Island Creek Coal Co., 441 F.2d 232, 235 (4th Cir. 1971); Sinclair Refining Co. v. Midland Oil Co., 55 F.2d 42, 45 (4th Cir. 1932). In general, four factors are to be considered: the threat of irreparable injury to the plaintiff should preliminary injunctive relief be denied; injury to other parties should the injunction issue; the probability that the plaintiff will succeed on the merits; and the interests of the public. Long v. Robinson, 432 F.2d 977, 979 (4th Cir. 1970); First-Citizens Bank & Trust Company v. Camp, 432 F. 2d 481, 483 (4th Cir. 1970); Airport Comm. of Forsyth County, North Carolina v. C.A.B., 296 F.2d 95, 96 (4th Cir. 1961); Virginia Petroleum Job. Ass'n v. Federal Power Com'n, 104 U.S.App.D.C. 106, 259 F.2d 921, 925 (1958).

■ In this case, we find no abuse of discretion in the District Court's denial of a preliminary injunction. First, the plaintiffs have yet to demonstrate that the continued construction of the marina will injure them. Second, should the Corporation be enjoined from carrying out the work under the permit, delays in construction may result in increased construction costs and postponed enjoyment by property owners of water access to the island. Third, and most significantly, plaintiffs have not shown a great likelihood of success on the merits. Although recognizing that under certain circumstances the issuance of a Corps of Engineers' permit may require filing of an environmental impact statement, we note, without expressing an opinion on the merits, the similarities between this case and Rucker v. Willis, 484 F.2d 158 (4th Cir. 1973). Finally, although the public interest may favor preservation of wilderness areas, it does not demand a halt to construction on private lands that has not been shown to threaten public areas.

Accordingly, we vacate the order of the District Court dismissing the action and remand for further proceedings consistent with this opinion. In the interim, Judge Craven's order of July 26, 1974 is to be continued with leave to the District Court to dissolve it at its discretion or pending final resolution of the merits.

Vacated and remanded.