**COALITION FOR RESPONSIBLE REGIONAL DEVELOPMENT and Ruth C. Sullivan, Appellants,**

v.

**Claude S. BRINEGAR, Secretary of Transportation, United States of America, and William S. Ritchie, Jr., Commissioner, Department of Highways, State of West Virginia, Appellees.**

No. 74–2316.

United States Court of Appeals, Fourth Circuit.

Argued May 9, 1975.

Decided June 16, 1975.

Ray E. Ratliff, Jr., Charleston, W. Va. (Kaufman & Ratliff, Charleston, W. Va., on brief), for appellants.

Kathryn A. Oberly, Atty., U. S. Dept. of Justice (Wallace H. Johnson, Asst. Atty. Gen., John A. Field, III, U. S. Atty., Ray L. Hampton, II, Asst. U. S. Atty., and George R. Hyde, Atty., U. S. Dept. of Justice, on brief), for appellee Claude S. Brinegar, Secretary of Trans.

Anthony G. Halkias, Charleston, W. Va., for appellee William S. Ritchie, Jr.

Before WINTER, BUTZNER and WIDENER, Circuit Judges.

WINTER, Circuit Judge:

In a suit by an association, the members of which are persons residing in the affected area, and a taxpayer also residing therein, the district court denied a preliminary injunction to restrain the construction of East End Bridge across the Ohio River at 31st Street in Huntington, West Virginia. Plaintiffs have appealed. The principal theory of the action is that § 4(f) of the Department of Transportation Act, 49 U.S.C. § 1653(f), which limits the Secretary's power to approve the use of public parklands, had been violated in that another site—the so-called Lewis Hollow site—was a "feasible and prudent alternative" to the 31st Street site which would re-

quire the taking of parklands.[1] Because public parklands will be taken if the bridge is built at 31st Street, there is no dispute that this Act applies.

■ Appellate review in a case of this nature is limited to a determination of whether the district court abused its discretion in denying interim relief. Conservation Council of N. C. v. Costanzo, 505 F.2d 498 (4 Cir. 1974); West Virginia Highlands Conservancy v. Island Creek Coal Co., 441 F.2d 232 (4 Cir. 1971). Nevertheless, we vacate the denial and remand the case for further proceedings. We do so because we are persuaded that the district court erroneously based its ultimate finding that plaintiffs did not show probable success in the trial for a permanent injunction on a subsidiary finding of fact which will not support that conclusion. This error may also have infected its ultimate findings that plaintiffs did not show irreparable harm and that it was in the public interest that interim relief be denied; in any event, on remand these findings as well should be reexamined.

### I.

East End Bridge is presently designed to cross into West Virginia at 31st Street at an elevation of approximately fifty feet over the Pleasant View Park. This area of Huntington, West Virginia is an historic neighborhood known as Guyandotte. The park, also called the Guyandotte Public Use Area, is a riverside area serving the community which surrounds it. The bridge will affect the Guyandotte area by bringing into the environment not only its inescapable physical presence, but also automobile traffic, pollution and noise. Some actual parkland will be taken for the construction of piers to support the bridge. Moreover,

the presence of the bridge and the consequences of its presence and use will constitute a further taking. Brooks v. Volpe, 460 F.2d 1193 (9 Cir. 1972).

The opinion of the district court denying interim relief is divided into three principal parts: "Findings of Fact," "Discussion," and "Conclusions of Law."[2] Under the heading "Findings of Fact," the district court found that since 1961 the West Virginia Department of Highways has had under consideration a number of proposals for the construction of a bridge across the Ohio River in the Huntington, West Virginia vicinity, and that, in addition to the proposed East End Bridge, alternate locations which have been studied included 24th, 25th, 29th and 30th Streets, and Lewis Hollow, the latter of which is located 2.2 miles east of the 31st Street site. With regard to East End Bridge, the district court found:

> The East End Bridge is one of three bridges in a combined project authorized by Chapter 17, Article 17, Section 23B, of the West Virginia Code of 1931, as amended, and can be constructed only with the proceeds from the sale of bonds authorized by a Bond Resolution adopted May 6, 1965. The statutory authority for the funding of the bridge by the issuance of bonds provides, in relevant part, specifically as follows: "to construct and establish a second new bridge in the vicinity of 24th Street to 31st Street in the City of Huntington . . .." *It would appear that any other location, other than the points named therein, is precluded by the very terms of the statutory authority.* (Emphasis added.)

At no other place in its entire opinion did the district court assign any other specific reason why rejection of the Lewis Hollow site was proper.

---

1.  Plaintiffs also alleged a violation of the Constitution and other federal and West Virginia statutes. For present purposes, we consider only the denial of interim relief under the Department of Transportation Act.

2.  A reading of the opinion demonstrates that, although unarticulated, the district court con-

scientiously sought to adhere to our holdings in Conservation Council of N. C. v. Costanzo, 505 F.2d 498 (4 Cir. 1974); West Virginia Highlands Conservancy v. Island Creek Coal Co., 441 F.2d 232 (4 Cir. 1971), and Sinclair Refining Co. v. Midland Oil Co., 55 F.2d 42 (4 Cir. 1932), in deciding the matter.

In the portion of its opinion labeled "Discussion," the court acknowledged the limited scope of its function under Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), in reviewing a determination by the Secretary of Transportation regarding the taking of parkland. It then said that, "defendants considered the relevant factors applicable to the proposed alternative routes and that as a result of this study, it was determined that a feasible and prudent alternative to the 31st Street location did not exist." It added also in concluding this portion of its opinion, "the Court is not convinced that the plaintiffs will probably be successful on the merits at a trial."

Finally, in the portion of its opinion entitled "Conclusions of Law," the district court stated that plaintiffs "have failed to establish that they will suffer irreparable harm if a preliminary injunction is not granted, nor have they demonstrated a high probability of prevailing on the merits of the action. Moreover, it is this Court's opinion that the public interest favors proceeding with the plans as proposed."

■■■ As we read the opinion of the district court, its finding that the proceeds from the sale of bonds authorized by the bond resolution adopted May 6, 1965, may not be used to build East End Bridge should it be located at Lewis Hollow as plaintiffs advocate, was a substantial factor—if, indeed, not the sole factor—in its conclusion that the Secretary of Transportation had properly determined that the Lewis Hollow site was not a feasible and prudent alternative to the 31st Street location. Consistent with its conclusion that the Lewis Hollow site lawfully could be rejected for this reason, the district court concluded that plaintiffs did not show that they would probably be successful on the merits at trial. The finding that the Lewis Hollow site could be summarily rejected appears to be a factor also in the conclusions that plaintiffs failed to show irreparable injury if construction of the bridge at 31st Street were not preliminarily enjoined, and that it was in the public interest that construction of the bridge at 31st Street proceed apace. In reasoning from that premise, the district court erred because we think that the inability of West Virginia to finance the construction of the bridge from the proceeds of the sale of bonds heretofore authorized, even if that inability be established under state law, is not alone a valid reason to justify the conclusion that the Lewis Hollow site is not a feasible and prudent alternative when the provisions of 49 U.S.C. § 1653(f) and the decision in Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), are considered. It follows that if the Lewis Hollow site was rejected for the wrong reasons, the Act has been violated unless and until some other valid reason for rejecting the Lewis Hollow site has been established. We turn to why we reach this conclusion.

II.

Section 4(f) of the Department of Transportation Act, 49 U.S.C. § 1653(f), is quite specific that parkland may not be put to non-park uses unless there is *no* feasible and prudent alternative to the non-park use of the land. The pertinent text of the Act follows:

It is hereby declared to be the national policy that special effort should be made to preserve the natural beauty of the countryside and public park and recreation lands, wildlife and waterfowl refuges, and historic sites. . . . [T]he Secretary shall *not* approve any program or project which requires the use of any publicly owned land from a public park, recreation area, or wildlife and waterfowl refuge of national, State, or local significance as determined by the Federal, State, or local officials having jurisdiction thereof, or any land from an historic site of national, State, or local significance as so determined by such officials *unless (1) there is no feasible and prudent alternative to the use of such land,* and (2) such program includes all possible planning to minimize harm to

such park, recreational area, wildlife and waterfowl refuge, or historic site resulting from such use. (Emphasis added.)

Whatever else may establish that the Lewis Hollow site is not a feasible and prudent alternative to the proposed 31st Street site, we think that *Overton Park* leads inevitably to the conclusion that West Virginia's potential inability to finance the construction of East End Bridge *from* the proceeds of sale of the bonds heretofore authorized if it is constructed at Lewis Hollow does not mean that the Lewis Hollow site need not be considered as an alternative.[3] Stated otherwise, Lewis Hollow is not rendered an infeasible and imprudent alternative *solely* because of restrictions that may exist in West Virginia's present scheme of financing the cost of construction of East End Bridge.

To hold otherwise would permit a state, by self-imposed restrictions, to nullify the declared purpose of Congress that parkland not be used for non-park purposes unless there is no feasible and prudent alternative. There is in this record no showing that West Virginia could not finance construction of the bridge from sources other than the proceeds from the sale of these bonds, that it could not authorize, issue and sell other bonds to permit the bridge to be built elsewhere than between 24th and 31st Streets, or that the cost of building a bridge at Lewis Hollow would be of such extraordinary magnitude compared to the cost of construction at the 31st Street location that the Lewis Hollow site is not a feasible and prudent alternative.

We draw this teaching from the portion of the opinion in *Overton Park* which discussed the Secretary's contention that the "feasible and prudent" test of § 1653(f) authorized him "to engage in a wide-ranging balancing of compet-

ing interests," including "the detriment resulting from the destruction of parkland against the cost of other routes, safety considerations, and other factors . . . " 401 U.S. at 411, 91 S.Ct. at 821. The argument was firmly rejected in language which indicates that cost is a subsidiary factor in all but the most exceptional case (from which we infer that a preferred plan of financing is also subsidiary), and also sheds light on the factors of irreparable injury and the public interest on which the district court relied to deny interim relief:

It is obvious that in most cases considerations of cost, directness of route, and community disruption will indicate that parkland should be used for highway construction whenever possible. . . . And since people do not live or work in parks, if a highway is built on parkland no one will have to leave his home or give up his business. . .

Congress clearly did not intend that cost and disruption of the community were to be ignored by the Secretary. But the very existence of the statutes indicates that protection of parkland was to be given paramount importance. The few green havens that are public parks were not to be lost unless there were truly unusual factors present in a particular case or the cost or community disruption resulting from alternative routes reached extraordinary magnitudes. If the statutes are to have any meaning, the Secretary cannot approve the destruction of parkland unless he finds that alternative routes present unique problems. (Footnotes eliminated.) 401 U.S. at 411–13, 91 S.Ct. at 821.

Thus, we conclude that it was improper for the district court to rely on the unavailability of the proceeds of bonds already authorized in deciding that Lewis Hollow *could not be a feasible and*

---

**3.** Whether the proceeds of bonds issued and sold under a resolution limiting their use to a "bridge in the vicinity of 24th Street to 31st Street . . . " may properly be applied to the construction of a bridge 2.2 miles east of

31st Street is at least arguable, and has not been authoritatively determined under state law. It may be significant, however, that part of the proposed 31st Street bridge will also be east of 31st Street.

prudent alternative site.[4] Hence, the district court's conclusion that there was little likelihood that plaintiff could prevail on the merits when the case came on for hearing on plaintiffs' prayer for permanent relief is presently unsustainable.

Precisely why the district court concluded that plaintiffs failed to show irreparable injury if interim relief were not granted is somewhat obscure. If it was that at the time of hearing in the district court, concrete steps to implement the decision to build the bridge at 31st Street had not been taken, the district court's conclusion would be unassailable. But, in oral argument we were told that land acquisition for the bridge construction may commence at any time, the pier contract has already been let, and more construction contracts will be let in June or July, 1975. The district court may have believed that there were no alternatives to the 31st Street site, and that therefore the plaintiffs would not suffer any unnecessary injuries from the progress of work on that site. But the present record does not support elimination of the Lewis Hollow site as a "feasible and prudent alternative"; and if in fact the bridge location must be changed, then continued progress on the 31st Street site may cause needless dislocation in the Guyandotte area and may result in needless expenditures of public funds. Since there is no apparent source from which these injuries could be compensated, they would be irreparable.

■ Of course, a delay in construction might also increase the total cost of construction, but this is only another factor which should be considered by the district court on remand, at another hearing on any renewed application for preliminary injunction or at the hearing on permanent relief, in the light of circumstances which have occurred since the previous hearing and in the light of our comments and the language of *Overton Park* indicating the relative sanctity of parklands.

■ Similarly, the district court's conclusion that the public interest requires that construction continue apace until trial on the permanent injunction should be reexamined. *Overton Park* and § 4(f) make clear that the ultimate public interest is in the preservation of parklands unless and until it is shown that parklands unavoidably must be used for highway purposes. They may not be used for highway purposes solely because a state's preferred means of financing the cost of construction of a bridge may not be applied to another site if the other site is otherwise feasible and prudent, and the cost of its construction may be otherwise financed.

### III.

■ Two further comments are required: During argument, we were told that since the trial in the district court, plaintiffs had discovered documentary evidence to indicate that the extent of taking of parklands was greater than what was anticipated when the Secretary of Transportation approved the 31st Street site. We express no view on the accuracy of this representation, and as an appellate court we decline to consider and to weigh after-discovered evidence. Such evidence should be presented to the district court when the matter of an interlocutory injunction is reconsidered or plaintiffs' application for a permanent injunction is heard.

■ Finally, we recognize fully the need to bring this litigation to a final conclusion at the earliest possible date. If, after trial of the case on the merits, the 31st Street site is legally acceptable, that conclusion ought not to be so long delayed that other intervening factors may render defendants' victory Pyrrhic. While we vacate the denial of a preliminary injunction, we, of course, do not

---

4. See also Natural Resources Defense Council, Inc. v. Morton, 148 U.S.App.D.C. 5, 458 F.2d 827, 837 (1972):

The mere fact that an alternative requires legislative implementation does not automatically establish it as beyond the domain of what is required for discussion . . . ..

suggest that a preliminary or permanent injunction should issue, nor do we insist that there be another hearing on a motion for a preliminary injunction prior to the time that the case is heard on plaintiffs' prayer for permanent relief. The district court in its discretion may proceed to trial on the permanent injunction without the necessity of entertaining a renewal of the application for a preliminary injunction, if such trial may conveniently be scheduled to proceed promptly.

Vacated and remanded.

WIDENER, Circuit Judge (dissenting):

I respectfully dissent. I would affirm for the reasons stated by the district court except as its statement as to alternatives under 29 U.S.C. § 1653(f) may be construed to allow an ultimate decision here concerning alternatives under that statute solely on account of geographical limitations of the West Virginia bond issue.

An examination of the record shows beyond doubt that there was little or no weight given by the Coast Guard (the responsible federal agency) to the location limitation of the bond issue. The decision to locate the bridge at 31st Street rather than Lewis Hollow, or any of the other numerous locations considered, was based on entirely different considerations, and the position of the State as to whether or not the money from the bond issue could have been spent at the Lewis Hollow location was largely, or even entirely, discounted. That being so, the judgment of the district court should be affirmed, but with directions as to the proper weight, in a trial on the merits, to give to the State's position on the location of the bridge so far as it rests on the location restriction of the bond issue.

Since the opinion of the majority suggests much of the position of the district court is not supported by the record, a small part is reproduced here. I submit the judgment of the district court (as contrasted with one of the reasons) not to issue the preliminary injunction is supported, and, since supported, should be affirmed, although one of the reasons given may not have been correct. *Riley Company v. Commissioner,* 311 U.S. 55, 59, 61 S.Ct. 95, 85 L.Ed. 36 (1940).

From the final environmental impact and parkland statement:

"The primary purpose of the bridge, however, is to relieve existing traffic problems and not necessarily to stimulate development of the area.

\* \* \* \* \* \*

"Lewis Hollow, approximately 2.2 miles east of the proposed location was evaluated as another alternative because this location was requested by many Huntington residents who are opposed to the proposed Guyandotte site. As an alternative, however, it is not considered prudent because it is outside of the general traffic corridor encompassed by this particular bridge project, and, therefore, it would not accomplish the objectives of the project as hereinbefore indicated that the proposed location will accomplish. Under, [sic] this alternative, 90% of all cross river vehicular traffic in the Huntington area that origin and destination studies showed originated within a 3 mile radius of the 6th Street bridge, would be faced with an average increase in round trip mileage of approximately 10 to 12 miles. Further, these studies showed that the projected level of traffic that would use a bridge at Lewis Hollow would not comprise a significant percentage of vehicles presently using the already overburdened existing 6th and 17th Street structures, nor generate sufficient revenue from tolls to successfully finance the project. It is likely that the motoring public would rather face the congestion at the existing crossings to avoid subjecting themselves to the increased distance and cost, related inconvenience and adverse traveling safety aspects that would be associated with the additional mileage involved under this alternative.

"The establishment of an entirely new traffic corridor that would result from

locating a highway and bridge facility at the Lewis Hollow site and related environmental impacts that would likely accrue to what may now be considered an open area relatively untouched and unspoiled by vehicular pollution and land usage changes commonly associated with highway development on new location would be avoided for the present by building the proposed bridge at the Guyandotte site. Along with the position maintained by the West Virginia Department of Highways alleging that the terms of the bonding resolution do not permit construction of the bridge at Lewis Hollow, the above facets of this site appear to strongly mitigate against the prudence of this alternative.

"Believing that the Guyandotte area generally would provide the most reasonable and environmentally acceptable site to build a bridge that would achieve the previously mentioned objectives, various alignments and approach configuration for tying the project into the Guyandotte street system were evaluated. While it was found that most of these schemes, as depicted in Figures 6 through 10 would have accomplished project objectives satisfactorily, some would have indeed taken or significantly affected other 4(f) sites and all would have had much greater adverse environmental impacts in general than the location and design selected which is shown in Figure 11. These impacts primarily involved the taking of a much larger number of residences with attendant relocation impacts and problems creating greater disruption to the Guyandotte Community in general than the proposed bridge. This is principally due to the reason that these schemes involve much more 'at grade' design than the proposed bridge which is to be an entirely elevated facility.

"In considering the feasibility and prudence of the various alternatives sites available for constructing the proposed bridge which would serve the intended purposes of the project, it became evident that locating the project within the existing Guyandotte River flood walls would create less disruption and adverse impacts on the quality of the human environment than any of the other location choices available.

"The 'do nothing' alternative or by not building the proposed facility, the State can preserve the integrity of the environment in the immediate area of the 31st Street location and continue to direct traffic over the present congested routes. While maintaining the status quo would eliminate the presently planned use of 4(f) land, this alternative in effect allows the continuation of adverse impacts on the environment along the present avenues of travel. To not construct the project would only serve to aggravate the present Ohio River crossing problems. Furthermore, to not provide the new proposed crossing would effectively prohibit repairs to the 6th Street bridge, resulting in its ultimate condemnation and closing to traffic. Should this occur, all cross-river traffic would be shifted to the 17th Street bridge already intolerably congested."

\* \* \* \* \* \*

"The Second Coast Guard District Legal Officer has expressed the opinion that he finds no prohibition against other site locations and, further, that the applicant's reliance on the case of *State ex rel. Nelson v. Ritchie* to both preclude Lewis Hollow as an alternative location and to build only within an area between 24th Street and 31st Street is insupportable. The applicant continues to state that the bonding resolution precludes the utilization of the Lewis Hollow site. Therefore, the legality of the Lewis Hollow site as a valid, prudent alternative remains in dispute. *Notwithstanding the question of the legality surrounding the possible use of the Lewis Hollow site as the location for the proposed bridge, it appears not to be a prudent alterna-*

*tive because it is outside the general traffic corridor encompassed by this particular bridge project."* (Italics added)

It follows that I would affirm the judgment of the district court, and only require a slight modification of its opinion. While the majority questions the determination by the district judge that denial of interim relief is in the public interest, in my opinion our decision here may only serve to delay or cancel an improvement the public interest requires.