**MICCOSUKEE TRIBE OF INDIANS OF FLORIDA, Plaintiff,**

v.

**UNITED STATES of America et al., Defendants.**

No. 08–21703–CIV.

United States District Court, S.D. Florida.

Aug. 8, 2008.

Edward S. Geldermann, Mark Arthur Brown, U.S. Department of Justice, James C. Thomason III, Linda Amidon, Federal Highway Administration, for United States.

## *ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION*

URSULA UNGARO, District Judge.

THIS CAUSE came before the Court upon Plaintiff's Motion for Preliminary Injunctive Relief and Incorporated Memorandum of Law, filed on July 2, 2008 (D.E.3). Defendants filed their Response in Opposition on July 21, 2008 (D.E.14). Plaintiff filed its Reply in further support of its Motion on July 30, 2008 (D.E.16). As such, the Motion is now ripe for adjudication.

THE COURT has considered the Motion and the pertinent portions of the record and is otherwise fully advised in the premises. By way of background, this case arises out of the Tamiami Trail Modification Project (the "TTMP"), which provides for the relocation of a one mile portion of the Tamiami Trail, also known as U.S. Highway 41, from its current location outside Everglades National Park (the "Park") into the Park. (Pl.'s Mot. 4; Defs.' Resp. 1.) Everglades National Park, which incorporates a portion of the complex and fragile ecosystem known as the Everglades, has been Plaintiff's home for generations. (Pl.'s Mot. 6.) Plaintiff's tribal members have customary use and occupancy rights in certain areas of the Park, including an area that would be directly affected by the TTMP. (Pl.'s Mot. 6.)

In light of the negative effects that the Tamiami Trail and other man-made projects have had on the natural water flows in the Everglades, in 1989 Congress enacted the Everglades National Park Protection and Expansion Act (the "ENPPE Act"), Pub.L. No. 101–229, 103 Stat.1946, 16 U.S.C. § 410r–8. (Defs.' Resp. 3.) The ENPPE Act authorized the U.S. Department of the Interior ("USDOI") to acquire additional lands for an expansion of the Park, including the portion of the Park at issue in this action. (Defs.' Resp. 3.) The ENPPE Act also directed the Secretaries of the Army and the Interior to take steps to improve water deliveries into the Park and to restore the natural hydrological conditions within the Park. 16 U.S.C. § 410r–8(a)(1). Congress further directed that such modifications be consistent with the General Design Memorandum (the "GDM") to be prepared by the Jacksonville District entitled "Modified Water Deliveries to Everglades National Park." Id. at § 410r–8(a)(2). The GDM, which was released in 1992, proposed increasing water flow into the L–29 Canal, not realizing that the existing culverts under the Tamiami Trail roadway would be inadequate to deliver the increased volume. (*See* LRREA at 1–7, 1–8.) Once the culvert-related problem was discovered in the late

1990s, the U.S. Army Corps of Engineers (the "Corps") had to come up with an alternative method for increasing water flow.

After much investigation, analysis, and Congressional input regarding proposed methods for modifying water deliveries to the Park (*see* Defs.' Resp. 4–6), in June 2008, the Corps issued its *Modified Water Deliveries to Everglades National Park Tamiami Trail Modifications Final Limited Reevaluation Report and Environmental Assessment* (the "LRREA"). (*See* Pl.'s Mot., Ex. A.) The LRREA, which includes a Finding of No Significant Impact, proposes to relocate a one mile portion of the Tamiami Trial, currently running outside the Park, and replace it with a newly constructed bridge on federally-owned land that is part of the Park. (Pl.'s Mot. 4.) The narrow strip of land needed for the bridge runs parallel to the existing Tamiami Trail road system, a mere 40 feet to the south. (Defs.' Resp. 7.)

However, in order to complete the TTMP, the portions of the Park involved would need to be conveyed via Highway Easement Deed ("HED") from the USDOI to the Florida Department of Transportation ("FDOT") so that the Corps can construct and operate the bridge. (Pl.'s Mot. 2.) Because USDOI currently does not have direct statutory authority to convey the necessary strip of land at the northern edge of the Park, the USDOI's National Park Service ("NPS") in 2006 requested assistance from the Department of Transportation (the "DOT")'s Federal Highway Administration (the "FHWA"), which has authority to act as a land transfer agent, to convey highway easements to FDOT. (Defs.' Resp. 7.) NPS made such HED request pursuant to 23 U.S.C. § 317, explaining that the transfer would help "to implement the beneficial aspects of reloca-

tion and modification of the road in order to promote the increased flow of water into the [Park]." (*See* D.E. 14–6 at 1–2.) In the same letter, NPS also raised the issue of the applicability of Section 4(f)[1] of the DOT to the TTMP, asking for the FHWA's opinion on NPS's preliminary determination that Section 4(f) did not apply to the TTMP because the TTMP is not a transportation project. (*See* D.E. 14–6 at 2.) By letter dated October 20, 2006, FHWA's Florida Division concluded that "[t]he proposed project is an environmental restoration project and the [FHWA's] involvement in the transfer of property between another Federal Agency and [FDOT] would not trigger the applicability of Section 4(f)." (D.E.14–7.) The Corps's land transfer application, submitted on behalf of FDOT, remains pending before NPS as of July 21, 2008. (Defs.' Resp. 8.)

Section 4(f) provides, in pertinent part, that the Secretary of the DOT "may approve a transportation program or project . . . requiring the use of publicly owned land of a public park, recreation area, or wildlife or waterfowl refuge of national, State, or local significance . . . only if (1) there is no prudent or feasible alternative to using that land; and (2) the program or project includes all possible planning to minimize harm to the park, recreation area, wildlife and waterfowl refuge, or historic site from the use." 49 U.S.C. 303(c). Plaintiff contends that because the TTMP is a transportation project, Section 4(f) applies, requiring the Secretary of the DOT to comply with Section 4(f) and undertake the necessary evaluation. (Pl.'s Mot. 4.) It is undisputed that no Section 4(f) review has been completed in regards to the TTMP. (Pl.'s Mot. 10; *see generally* Defs.' Resp.) As a result, Plaintiff argues, Defendant Mary Peters, as Secretary of

---

1. Section 4(f) of the Department of Transportation Act, 49 U.S.C. § 1653(f), was repealed in 1983 but was recodified without substantial change at 49 U.S.C. § 303.

the DOT, has violated Section 4(f). Accordingly, in its Motion, Plaintiff moves the Court to enjoin Defendants from (1) approving and/or entering into any agreements, including any land transfer and/or HED agreements to convey any portions of the Park to FDOT for the TTMP and (2) commencing any construction activities related to the TTMP, as set forth in the LRREA. (Pls.' Mot. 1–2.)

■ Preliminary injunctive relief is warranted where the movant establishes (1) a substantial likelihood of success on the merits of its complaint; (2) that irreparable injury will be suffered unless the injunction issues; (3) that the threatened harm to the movant outweighs whatever harm the injunction may cause the non-moving party; and (4) that the proposed injunction would not be adverse to the public interest. *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092 (11th Cir. 2004); *see also Louis v. Meissner*, 530 F.Supp. 924 (S.D.Fla.1981). Because a " 'preliminary injunction is an extraordinary and drastic remedy, one ... should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.' " *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997) (emphasis in original) (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129–130 (2d ed.1995)).

Because Plaintiff is challenging an agency action—the DOT's decision that no Section 4(f) evaluation is necessary—the Court reviews such decision[2] pursuant to § 706 of the Administrative Procedure Act (the "APA"). *See Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 413, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). Under § 706, a court may set aside an agency's decision only if it finds the decision to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). As the Eleventh Circuit has noted, this standard is "highly deferential" to the agency.[3] *Sierra Club v. Van Antwerp*, 526 F.3d 1353, 1360 (11th Cir.2008).

■ The focal point for judicial review of an administrative agency's action should be the administrative record. *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973). "The court's role is to ensure that the agency came to a rational conclusion, 'not to conduct its own investigation and substitute its own judgment for the administrative agency's decision.' " *Van Antwerp*, 526 F.3d at 1360 (quoting *Preserve Endangered Areas of Cobb's History, Inc. ("PEACH") v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242, 1246 (11th Cir.1996)). "Rather, the 'task of the reviewing court is to apply the appropriate ... standard of review ... to the agency decision based on the record the agency presents to the reviewing court.' " *PEACH*, 87 F.3d at 1246 (quoting *Florida Power and Light Co. v. Lorion*, 470 U.S.

---

**2.** The Court will consider the FHWA's letter of October 20, 2006 to constitute the final agency action in this case. (*See* D.E. 14–7.)

**3.** The Court notes and rejects Plaintiff's argument that the DOT's decision constitutes a guidance or opinion letter that is not entitled to deference in this case. (*See* Pl.'s Reply 5–6 (citing *Sierra Club, Inc. v. Leavitt*, 488 F.3d 904, 915).) The FWHA's letter of October 20, 2006 constitutes the final agency action in this case, for in it the DOT did not give its opinion on how Section 4(f) should be interpreted but instead concluded that Section 4(f) was not applicable to the TTMP. (*See* D.E. 14–7; *see also* Pl.'s Reply 5 n. 6 ("Given that the agency action in this case was taken on October 20, 2006 ...").) Additionally, the Court will not consider FHWA's October 20, 2006, letter to have been a "guidance letter" on how Section 4(f) should be interpreted because such letter would no longer constitute final agency action and this action would not be ripe.

729, 743–44, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985)).

After carefully considering the parties' briefs, the Court finds that Plaintiff has not offered an adequate factual basis to support the issuance of a preliminary injunction. In particular, the Court is not persuaded at this juncture in the litigation that there is a substantial likelihood of success on the merits of the Complaint. For Plaintiff to succeed on the merits of its claim, it must demonstrate that the DOT's decision not to conduct a Section 4(f) review regarding the TTMP—essentially the conclusion that the TTMP does not constitute a transportation project—was arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A).

In its Motion, Plaintiff argues that the TTMP, which Defendants have labeled an environmental restoration project, is necessarily a transportation project because it involves changes to a highway—the Tamiami Trail—that is currently being used by 5,200 vehicles daily. (Pl.'s Mot. 10.) Plaintiff further posits that Defendants' characterization of the TTMP as an environmental restoration project cannot hide the bare fact that such project involves the construction of a highway bridge on national parkland and that such bridge will be regulated by the FHWA. (Pl.'s Reply 6.) However, such facts alone do not establish a substantial likelihood that the DOT's finding that the TTMP constitutes an environmental restoration project—not a transportation project—within the meaning of Section 4(f) was arbitrary and capricious. While the parties have not provided the complete administrative record as of October 20, 2006,[4] the extensive history of the TTMP, including the motivations behind such project, recounted in the

LRREA indicates that the administrative record would likely contain abundant evidence that supports the DOT's conclusion regarding the nature of the TTMP. (*See generally* LRREA.)

■ Although the TTMP undoubtedly involves modifications to a highway, Plaintiff has not carried its burden to demonstrate that DOT likely was arbitrary and capricious for concluding that the such project is not transportation project. There is no dispute that the TTMP arises out of a Congressional mandate contained in the ENPPE—specifically that the Secretaries of the Army and the Interior take steps to improve water deliveries into the Park and to restore the natural hydrological conditions within the Park. 16 U.S.C. § 410r–8(a)(1). The main goal of the TTMP is to improve water flows in the Everglades, not to improve transportation. As Plaintiff notes, the TTMP will not enhance transportation over the Tamiami Trail, as it will simply relocate a portion of the existing Tamiami Trail into the Park. (Pl.'s Mot. 10 (citing LRREA at 2–3).) The Tamiami Trail already exists and the FHWA will continue to regulate it, including any altered portions; the TTMP proposes modifying it solely for environmental reasons. As a result, the Court is not persuaded that the DOT was arbitrary and capricious in its decision that the TTMP does not constitute a transportation project subject to Section 4(f).

The Court also notes the dearth of case law, both in this circuit and around the country, interpreting the meaning of "transportation program or project" in Section 4(f) that could inform the Court in its review process. In virtually every pub-

---

4. In reviewing the propriety of an agency action, the Court is normally limited to the administrative record as it existed at the time the agency acted. *Ocean Conservancy v. Evans,* 260 F.Supp.2d 1162, 1167 (M.D.Fla. 2003). In this case, the agency action occurred through a letter dated October 20, 2006. (*See* D.E. 14–7; Defs.' Resp. 7; Pl.'s Reply 5 n. 6.)

lished case concerning a transportation project and the applicability of Section 4(f), the "transportation" nature of the project at issue was well established, as such project involved the construction of an entirely new road or improvements to a road to improve transportation. *See, e.g., Merritt Parkway Conservancy v. Mineta*, 424 F.Supp.2d 396 (D.Conn.2006) (project involved enlarging a highway interchange); *see also City of South Pasadena v. Slater*, 56 F.Supp.2d 1106 (C.D.Cal.1999) (project involved extending freeway); *see also Stop H–3 Ass'n v. Coleman*, 533 F.2d 434 (9th Cir.1976) (project involved new interstate highway); *see also Coalition for Responsible Regional Development v. Brinegar*, 518 F.2d 522 (4th Cir.1975) (project involved new bridge over river); *see also Wade v. Lewis*, 561 F.Supp. 913 (D.C.Ill.1983) (project involved construction of limited access freeway to handle increased traffic flows); *see also Valley Community Preservation Comm'n v. Mineta*, 231 F.Supp.2d 23 (D.D.C.2002) (project involved expanding two-lane highway into four-lane highway); *see also Hill v. Coleman*, 399 F.Supp. 194 (D.Del.1975) (project involved new highway facility).

The one case that touches on the determination of what constitutes a transportation project—*National Trust for Historic Preservation in U.S. v. Dole*, 828 F.2d 776 (D.C.Cir.1987)-lends credence to the Court's conclusion. *National Trust* involved the installation of suicide prevention barriers on a bridge that is an historic landmark. *Id.* at 777. The parties disagreed over whether Section 4(f) was applicable. The appellate court affirmed the district court's decision that no Section 4(f) review was required, concluding that "appellants have failed to demonstrate the existence of the requisite transportation purpose." *Id.* at 779. "We see no obvious relationship between preventing individuals from leaping off a bridge and facilitating the flow of traffic over it." *Id.* at 779.

Similarly, in the case at hand, the purpose of the proposed modification—environmental restoration—appears to be unrelated to any issue regarding the flow of traffic over the roadway.

Additionally, the D.C. Circuit has stated that Section 4(f) is primarily aimed at the construction of new highways and other transportation facilities or major changes to such transportation facilities, a situation that arguably does not exist in the instant case. "Congress desired that the effect on parkland and other recreational facilities be fully considered during the planning stages of major new physical 'facilities.' Congress gave no indication that [Section 4(f)] was intended to create ongoing review of relatively minor changes in the operational characteristics of an established transportation facility." *Sierra Club v. U.S. Dept. of Transp.*, 753 F.2d 120, 130 (D.C.Cir.1985).

Plaintiff's argument that "[i]f the purpose were 'restoration,' as Defendants claim, that goal could be achieved by simply removing the Tamiami Trail altogether" also fails. (*See* Pl.'s Reply at 1.) The mere fact that the environmental restoration sought to be accomplished through the TTMP could be achieved using a different (and likely unrealistic) method is irrelevant; paths to a goal are not mutually exclusive as goals can often be reached in a variety of ways. The existence of one plan that would achieve a purpose neither precludes all other plans that would effectuate such purpose nor indicates that the other plans have different purposes.

While the Court does not necessarily agree with the DOT's conclusion that the TTMP does not fall into the category of "transportation projects," the Court's ultimate role is merely to ensure that the DOT came to a rational conclusion, not to undertake its own investigation and substitute its own judgment for the DOT's deci-

sion. *See Van Antwerp*, 526 F.3d at 1360. Given the lengthy history of and Congressional mandates behind the TTMP,[5] the Court cannot conclude at this time that the DOT's decision not to conduct a Section 4(f) review was likely arbitrary and capricious. Thus, because Plaintiff has not adequately shown a substantial likelihood of success on the merits in its Motion for Preliminary Injunction, the Court is not persuaded of the necessity of granting such an "extraordinary" relief at this time. *See Mazurek*, 520 U.S. at 972, 117 S.Ct. 1865. It is hereby

ORDERED AND ADJUDGED that Plaintiff's Motion for Preliminary Injunction (D.E.3) is DENIED.

DONE AND ORDERED in Chambers, in Miami, Florida, this 7th day of August, 2008.

---

5. The Court notes and dismisses Plaintiff's argument that the Defendants are not entitled to deference regarding the DOT's 2006 Section 4(f) decision because such decision was not based on a review or analysis of the current 2008 project. (*See* Pl.'s Reply 7.) When the DOT made its decision in October 2006 that Section 4(f) does not apply to the TTMP, it was evident that a portion of the Tamiami Trail would need to be shifted south into the Park. (*See* D.E. 14–6.) The exact positioning of the bridge is irrelevant, as the facts regarding the underlying purpose of the TTMP has already been established and remain unchanged.