COALITION FOR RESPONSIBLE
REGIONAL DEVELOPMENT and
Ruth C. Sullivan, Plaintiffs,

v.

William T. COLEMAN (Successor to Claude S. Brinegar), Secretary of Transportation, United States of America, and William S. Ritchie, Jr., Commissioner, Department of Highways, State of West Virginia, Defendants.

Civ. A. No. 74–86–HN.

United States District Court,
S. D. West Virginia,
Huntington Division.

Jan. 6, 1976.

Ray E. Ratliff, Jr., Charleston, W. Va., for plaintiffs.

John A. Field, III, U. S. Atty., for Secretary of Transportation.

Anthony G. Halkias, Asst. Atty. Gen., Charleston, W. Va., for Commissioner, Dept. of Highways.

## OPINION

DENNIS R. KNAPP, Chief Judge.

On July 12, 1974, plaintiffs instituted this action for declaratory and injunctive relief against the construction of a bridge across the Ohio and Guyandotte rivers from 31st Street in the Guyandotte area of Huntington, West Virginia to Proctorville, Ohio. On August 7, 1974, a hearing was held on plaintiffs' motion for a preliminary injunction. Thereafter, on August 16, 1974, this Court denied plaintiffs' motion and plaintiffs appealed. The Fourth Circuit Court of Appeals vacated the denial of the preliminary injunction without suggesting "that a preliminary or permanent injunction should issue." *Coalition for Responsible Regional Development v. Brinegar,* 518 F.2d 522, 528 (4th Cir. 1975).

On remand, a hearing was held on plaintiffs' prayer for permanent relief. The plaintiffs' theory of this case, as disclosed by the pretrial order, is that the final environmental impact statement for the proposed bridge project was legally defective and in violation of the Department of Transportation Act, 49 U.S.C. § 1653, *et seq.*; The National Historic Preservation Act, 16 U.S.C. § 470, *et seq.*; and the National Environmental Policy Act, 42 U.S.C. § 4332, *et seq.*

The 31st Street Bridge, which is the subject of this litigation, is one of three bridges in a combined project authorized by Chapter 17, Article 17, Section 23B, of the Code of West Virginia 1931, as amended.

The bridge is a state financed project which will be operated as a toll facility. There are no federal funds involved. Nevertheless, 33 U.S.C. § 491, *et seq.,* re-

quires a Coast Guard permit for the bridge since it crosses navigable waters. Therefore, in order to pass upon the state highway department's permit request, the Coast Guard was required to first comply with the National Environmental Policy Act, 42 U.S.C. § 4321, et seq., and related environmental statutes. Accordingly, the Coast Guard prepared an environmental impact statement (EIS) on the 31st Street Bridge.

The draft EIS was circulated to the Council on Environmental Quality and the public on April 24, 1972. Comments were received on the draft and on May 10, 1974, the Coast Guard issued its final environmental impact statement (FEIS) which reflects consideration and disposition of all comments. Although not required to do so, the Coast Guard also conducted a public hearing on July 13, 1972 in order to allow interested citizens an opportunity to express their views on the environmental impact of the project. The final EIS reflects consideration of the information gathered at the public hearing.

As described in the EIS, the 31st Street Bridge is a medium level, fixed two-lane highway bridge. The bridge would provide a connecting link between Ohio Route 7 at Proctorville, Ohio and U. S. Route 60 in Huntington. According to the EIS, many Ohio residents work and shop in the Huntington area. Existing bridges closer to the center of the city are inadequate to handle traffic needs, causing serious traffic backups and intracity congestion. Thus, the proposed 31st Street Bridge was intended to relieve present traffic congestion problems in the City of Huntington.

At any rate, it was decided upon that the bridge should locate at 31st Street in Huntington, in an area of Huntington known as Guyandotte. Because public parklands would be taken if the bridge is built at 31st Street, the Coast Guard prepared a "4(f) Statement," as required by the Department of Transportation Act, 49 U.S.C. § 1653(f).

As pointed out by the Fourth Circuit Court of Appeals, Section 4(f) of the Department of Transportation Act is quite specific that parkland may not be put to non-park uses unless there is no feasible alternative to the non-park use of the land.

49 U.S.C. § 1653, in pertinent part, provides:

"It is hereby declared to be the national policy that special effort should be made to preserve the natural beauty of the countryside and public park and recreation lands, wildlife and waterfowl refuges, and historic sites. . . . [T]he Secretary shall not approve any program or project which requires the use of any publicly owned land from a public park, recreation area, or wildlife and waterfowl refuge of national, State, or local significance as determined by the Federal, State or local officials having jurisdiction thereof, or any land from an historic site of national, State, or local significance as so determined by such officials unless (1) there is no feasible and prudent alternative to the use of such land, and (2) such program includes all possible planning to minimize harm to such park, recreational area, wildlife and waterfowl refuge, or historic site resulting from such use."

The 4(f) statement concluded that there was no feasible and prudent alternative to the bridge proposal located at 31st Street that would avoid the use of or have an effect on the 4(f) area involved and still provide a reasonable environmentally acceptable solution to the overall traffic congestion problems. It further provided that the proposal included all reasonable planning to minimize harm to the 4(f) area.

When the EIS was prepared, there were no landmarks or historic places in the vicinity of the 31st Street site listed on the National Register. The Coast Guard, however, anticipated the possibility that one or more properties of local historical significance might be added to the National Register prior to the issuance or denial of the bridge permit. Accordingly, the EIS/4(f) statement considered generally the historic nature of the area. The statement identified and stated two properties in particular which were deemed to be of National Register quality. It was concluded that neither

property would be taken or affected by the proposed project.

At the trial on the merits of this case, the plaintiff, as stated, challenged the sufficiency of the 4(f) statement, contending that it is legally defective and in violation of the above-quoted federal statutes. Specifically, as the Fourth Circuit Court of Appeals points out: "[t]he principal theory of the action is that § 4(f) of the Department of Transportation Act, 49 U.S.C. § 1653(f), which limits the Secretary's power to approve the use of public parklands, had been violated in that another site—the so-called Lewis Hollow site—was a 'feasible and prudent alternative' to the 31st Street site which would require the taking of parklands."

As disclosed by the pretrial order, the issues of law to be decided herein are as follows: (1) Whether or not the subject Final Environmental Impact/4(f) Statement contains an adequate consideration of alternatives to the project, in compliance with the Department of Transportation Act and the National Environmental Policy Act; (2) Whether or not the administrative agency abused its discretion in either excluding or failing to fully consider Lewis Hollow as a prudent and feasible alternative, because of the subject bond resolution, in compliance with the Department of Transportation Act; (3) Whether the project engineering studies, relied on by the administrative agency, are erroneous, and/or insufficient, and/or legally irrelevant, in violation of the Department of Transportation Act and the National Environmental Policy Act; and (4) Whether or not the Final Environmental Impact/4(f) Statement makes a legally supportable finding as to the project's effect on certain historic sites, in compliance with the Department of Transportation Act and the National Historic Preservation Act.

As stated in this Court's prior opinion, the Supreme Court of the United States has held that the standard of review to be used by courts in reviewing a decision of the Secretary of Transportation regarding the taking of parkland is very narrow. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S.

402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). The Court is not empowered to substitute its judgment for that of the agency but rather to review its findings to determine whether all the necessary procedural steps were followed and to be sure that the resulting administrative decision is not arbitrary or capricious.

In addition, this Court acknowledges that while the Secretary's decision is entitled to a presumption of regularity, this presumption "is not to shield his action from a thorough, probing, in-depth review." *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971).

Upon a complete review of the record in this case, the Court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. Plaintiff Coalition for Responsible Regional Development (CRRD) is a non-profit, unincorporated association having an address at 101 Richmond Street, Huntington, West Virginia.

2. Plaintiff Ruth C. Sullivan is a citizen, resident and taxpayer of Huntington, Cabell County, West Virginia, who resides and owns property in the immediate vicinity of the location of the proposed bridge and is the duly elected president of CRRD.

3. Defendant Claude S. Brinegar is the Secretary of Transportation of the United States. In that capacity he is responsible for administering the Department of Transportation of the United States, and specifically for administering the Federal Aid to Highways Act.

4. Defendant William S. Ritchie, Jr. is the Commissioner of the Department of Highways of the State of West Virginia. In that capacity he is responsible for administering the affairs of the Department of Highways of the State.

5. The proposed bridge is one of three bridges in a combined project authorized by Chapter 17, Article 17, Section 23B, of the Code of West Virginia, 1931, as amended.

6. Since 1961 the State Department of Highways has had under consideration a number of proposals for the construction of a bridge across the Ohio River in the Huntington, West Virginia vicinity. In addition to the 31st Street site, alternate locations studied included 24th, 25th, 29th and 30th streets and Lewis Hollow, the latter of which is located 2.2 miles east of the 31st Street site.

7. Traffic studies made in the years 1961 and 1965 disclose that ninety percent (90%) of all cross river traffic at Huntington originated within a three mile radius of a bridge located at 6th Street in Huntington.

8. The 6th Street Bridge has a traffic congestion problem.

9. The primary purpose of the proposed bridge is to relieve existing traffic problems and not necessarily to stimulate development of the area and to provide a bridge which will carry the traffic which normally uses the 6th Street Bridge for a period of approximately two and one-half years during the time that the 6th Street Bridge, which is in a serious state of disrepair, is closed for major repairs and reconstruction.

10. The 31st Street Bridge will take part of a public park known as Pleasant View Park.

11. This park area involved consists of 10.6 acres. While the area is utilized, facilities there are very limited. In addition, the park is subject to flooding which occurs two percent (2%) of the time.

12. The bridge has been located to pass within the existing floodwalls and will cross along the margin of the community with the Guyandotte River floodplain, not directly through or over the area.

13. No part of the public area or boating area will be taken, and only a small portion of the parking lot will be taken. The Department of Highways will replace the three parking places taken with an equal amount of land.

14. The proposed bridge will be constructed above 25,000 square feet of the park area. The park area is situate without the floodwalls protecting the Guyandotte area of Huntington and is subject to occasional flooding.

15. The design of the bridge project as an entirely elevated facility was selected as a measure to minimize intrusion into the area.

16. The 31st Street Bridge is a state financed project which will be operated as a toll facility. There are no federal funds involved in the financing of the bridge.

17. Five alternate locations to the proposed site were considered. Those locations were at 24th, 25th, 29th and 30th streets in Huntington and at Lewis Hollow.

18. The 24th and 25th street sites were not deemed to be feasible and prudent because of their incompatibility with the State of Ohio's plans for improvements to Ohio Route 7.

19. The 30th Street site was not deemed to be feasible and prudent because it did not provide for the reasonable needs of navigation. The 29th Street and 30th Street sites would adversely affect the operations of St. Mary's Hospital and require the relocation of substantially more families than would be necessitated by the 31st Street site.

20. The Lewis Hollow site is situate approximately 2.2 miles east of the proposed location.

21. The Lewis Hollow site would create 4(f) problems in that such a location would involve the taking of either a public fairground, a public school playground or a golf course.

22. Lewis Hollow is outside of the general traffic corridor encompassed by this particular project and it would therefore not accomplish the objectives of the project that the proposed location would accomplish. The projected level of traffic that would use a bridge at Lewis Hollow would not comprise a significant percentage of vehicles presently using the already overburdened existing 6th Street and West 17th Street structures.

23. The establishment of an entirely new traffic corridor would result from locating a highway and bridge facility at the Lewis Hollow site and related environmental impacts would likely accrue to what now may be considered an open area relatively untouched and unspoiled by the vehicular pollution; and land usage changes commonly associated with highway development on new locations would be avoided, for the present, by building the proposed bridge at the Guyandotte site.

24. Approximately $2 million has already been spent in the construction of the bridge at the 31st Street location.

25. In 1974, bridge construction costs increased approximately by thirty-eight (38%) percent.

26. It would be financially burdensome on the State of West Virginia to locate the bridge at any site other than at the 31st Street location.

27. The United States Coast Guard complied with § 106 of the National Historic Preservation Act, 16 U.S.C. § 470f. Under the National Historic Preservation Act, the Coast Guard was required to take into account the effect of the project on any building included in the National Register and afforded the Advisory Council on Historic Preservation a reasonable opportunity to comment on the project. These requirements were fully complied with in the instant case.

28. The Madie Carroll House and the land on which it is located will not be taken by the bridge project. The project is at least fifty feet away from the land on which the Madie Carroll House is located and on the other side of the Guyandotte River floodwall. The Guyandotte bridge site would not affect any historic site in Guyandotte. The Coast Guard notified the Advisory Council of its "no effect determination" and on September 20, 1973 the Council informed the Coast Guard that further compliance with § 106 was not required. After further review of this no effect determination, the Coast Guard reaffirmed its no effect determination.

29. It appears that funds administered by the Appalachian Regional Commission have been allocated for the construction of an access road to the 31st Street Bridge. These monies are granted under the Appalachian Development Highways System, a system in "conjunction with the interstate and other federal-highways."

30. There is no feasible and prudent alternative to the use of the parkland in question.

31. The program to locate the bridge at the 31st Street site includes all possible planning to minimize harm to the parkland.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the subject matter and the parties to this action by virtue of the provisions of 28 U.S.C. §§ 1331, 2201–2 and 5 U.S.C. §§ 701–706.

2. There is no feasible and prudent alternative to the use of the parkland in question.

3. The program to locate the bridge at the 31st Street site includes all possible planning to minimize harm to the parkland in question.

4. The Secretary has acted within the scope of his statutory authority in this matter.

5. The decision of the Secretary was based on full consideration of the relevant factors in this matter.

6. There was no error of judgment on the part of the Secretary in making his decision.

7. The decision of the Secretary was not arbitrary, capricious or an abuse of his discretion.

8. The final Environmental Impact/4(f) Statement contains an adequate consideration of alternatives to the bridge project in compliance with the federal statutes.

9. The administrative agency fully considered Lewis Hollow as a feasible and prudent alternative in compliance with the federal statutes and without regard to the bond resolution.

10. The project engineering studies relied upon by the administrative agency are valid, sufficient and legally relevant.

11. The Final Environmental Impact/4(f) Statement makes a legally supportable finding as to the projects effect on historic sites in compliance with the federal statutes.

12. Inasmuch as this project involves a toll facility, 23 U.S.C. § 129 prohibits the use of federal funds, including those administered by the Appalachian Regional Commission, on such a project.

13. In view of 36 C.F.R. 800.4(b) and (d), the National Historic Preservation Act has not been violated.

### DECISION

In view of the foregoing, it is the decision of this Court that judgment be for the defendants.