**WEST HOUSTON AIR COMMITTEE and Andrew Jackson, Petitioners,**

v.

**FEDERAL AVIATION ADMINISTRATION, Respondent.**

Nos. 85–4099, 85–4123.

United States Court of Appeals, Fifth Circuit.

March 12, 1986.

Jeffrey Civins, Austin, Tex., for petitioners.

John T. Stahr, Atty., Dept. of Justice, Appellate Sec., Lands Div., Jacques B. Gelin, Peter R. Steenland, Jr., Attys., Washington, D.C., Jake Johnson, Houston, Tex., for respondent.

Before THORNBERRY, ALVIN B. RUBIN and E. GRADY JOLLY, Circuit Judges.

**E. GRADY JOLLY, Circuit Judge:**

In this case we are asked to determine whether the Federal Aviation Administration (FAA) was plainly erroneous in deciding that an environmental assessment was not necessary in granting an Airport Operating Certificate to West Houston Airport (West Houston) pursuant to 14 C.F.R. Part 139. An Airport Operating Certificate, also known as a Part 139 certificate, authorizes an airport to serve any scheduled or unscheduled passenger planes having a seating capacity of more than thirty passengers. Because we find that the FAA was not plainly erroneous in deciding that an environmental assessment was not necessary in order to grant the Part 139 certificate, we affirm.

## I.

West Houston is a privately owned airport consisting of a single 4,000-foot asphalt runway and various facilities. Prior to West Houston's receipt of the Part 139 certificate, the runway was only authorized to accommodate smaller airplanes. All construction at West Houston since 1962 has been privately funded, requiring no federal authorization. A number of improvements have been made since 1982, both to service the airport's existing business, and to meet requirements necessary for obtaining an Airport Operating Certification under 14 C.F.R. Part 139. These improvements were completed prior to West Houston's application for this certificate.

Once its physical structures and facilities met FAA requirements, Woody Lesikar Aircraft Sales, Inc. (Lesikar Aircraft), the owner of West Houston, filed Part 139 certification application on October 16, 1984 to allow it to commence passenger and expanded commuter service.[1] FAA regulations implementing the National Environmental Policy Act (NEPA) with respect to airport actions specifically provide that Part 139 certification is "categorically excluded from the requirement for formal environmental assessment."[2] The FAA accordingly determined that issuance of a Part 139 operating certificate to West Houston did not require an environmental assessment. The FAA issued the Part 139 certificate on December 10, 1984.

On May 22, 1984, Air West Airlines, Inc. (Air West), also affiliated with Lesikar Aircraft, notified the FAA of its intention to apply for an Air Carrier Operating Certificate, pursuant to 14 C.F.R. Part 121 (Part 121 certificate). An Air Operating Certificate authorizes an airline to initiate regularly scheduled passenger service flights between specified destinations. Air West sought a Part 121 certificate to authorize service between the existing West Houston and Love Field in Dallas, Texas, using the fifty-seat Dash 7 aircraft.

After conducting precertification meetings with Air West, the FAA advised Air West that an environmental assessment of the issuance of a Part 121 certificate would be required. Air West informed the FAA on August 6, 1984, that it had retained a private consulting firm to prepare the envi-

---

**1.** A Part 139 certificate only authorizes an airport to serve larger passenger flights, but does not, of itself, permit airlines to schedule such larger planes into the airport. Before regularly scheduled passenger service flights into West Houston can begin, an air carrier must obtain a Part 121 certificate. FAA regulations, however, require that before a Part 121 certificate can be issued to an air carrier, an assessment of the potential environmental impacts must be conducted. Thus, before any larger passenger flights can be served at West Houston, the FAA must issue *both* a Part 139 certificate to the airport and a Part 121 certificate to the air carrier and perform an environmental assessment. Thus, issuance of the Part 139 certificate does not alter the *status quo* at West Houston,

but merely brings the airport one step closer to being authorized to serve larger passenger flights.

**2.** As discussed in note 1, since a Part 139 certificate does not alter the operation of an airport but merely allows it to service airlines which have been issued Part 121 certificates, the issuance of a Part 139 certificate is seldom controversial. Controversy relating to Part 139 certificates usually arises only when an airport must expand physically in order to qualify for the Part 139 certificate and such expansion results in the destruction of natural wildlife or historically valuable areas.

ronmental assessment. The draft environmental assessment was completed and available for public review and comment during the second week of October. The deadline for mailing of all public comments was October 27, 1984.

Following analysis and revision, the final environmental assessment was published on November 16, 1984. Five letters were received from the public within the required time period, all of which were addressed in the final environmental assessment. Because the West Houston Air Committee mailed its comments to the draft environmental assessment two weeks after the close of the comment period, these comments were not included. An addendum, however, was prepared and issued on December 3, 1984, for the sole purpose of responding to these concerns.

After reviewing the environmental assessment, the FAA issued on December 20, 1984, a "Finding of No Significant Impact" (FONSI) which analyzed the potential environmental impacts of Air West's service, and concluded that the project did not have a significant impact on noise-sensitive areas, air and water quality, public lands, wetlands or any other areas of the environment. The FONSI concluded that the proposed action was consistent with the policies and objectives of NEPA and that it would not significantly affect the quality of the human environment. The FAA issued a Part 121 certificate to Air West on December 21, 1984.

The West Houston Air Committee and Andrew Jackson (collectively WHAC), the petitioners, filed a timely petition for review of the FAA issuance of these certificates under 49 U.S.C. § 1486(a). The petitioners reside in Deerfield Village, a community built in 1975 near the airport. WHAC initially sought judicial review of the FAA's issuance to the airport of the Part 139 certificate and to the airline of the Part 121 certificate, contending that the FAA acted in violation of NEPA and FAA regulations promulgated to implement NEPA requirements. These actions were consolidated on April 24, 1985.

On September 18, 1985, however, Air West relinquished all rights to its Part 121 certificate. Thus, any of WHAC's issues on appeal that relate to the Part 121 certificate are moot and not considered by this court. Because these actions were consolidated, however, the administrative records created by the FAA pursuant to both the Part 121 and the Part 139 proceeding are before this court on appeal.

## II.

As a result of the mooting of the claims relating to the issuance of the Part 121 certificate, the sole issue remaining on appeal is whether the FAA erred in not performing an environmental assessment before issuing the Part 139 certificate authorizing the airport to serve any scheduled or unscheduled passenger planes having a seating capacity of more than thirty passengers. FAA regulations state that an environmental assessment should not be prepared before a Part 139 certificate is issued unless the proposed action is highly controversial. WHAC asserts that its opposition to the Part 139 proceeding makes the FAA's proposed action controversial, thus triggering the need for an environmental assessment. In addition, assuming that the FAA should have conducted an environmental assessment, WHAC contends that the environmental assessment conducted in the Part 121 proceedings is insufficient to satisfy this requirement because the FAA did not consider the cumulative impacts of granting both certificates. Thus, WHAC asks us to hold that the issuance of the Part 139 certificate was an abuse of discretion and that the case must be remanded to the FAA for withdrawal of the current certificate and for further environmental assessment.

## A.

■ The scope of judicial review of an agency's decision not to prepare an environmental assessment is whether the decision "is reasonable and made objectively and made in good faith on a reviewable environmental record." *Vieux Carre*

*Property Owners, Residents and Associates, Inc. v. Pierce,* 719 F.2d 1272, 1279 (5th Cir.1983) (citation omitted). Courts "should defer to the agency's interpretation of its own [categorical exclusion] regulations." *City v. Federal Highway Administration,* 756 F.2d 1014, 1020 (4th Cir. 1985). "In construing administrative regulations, 'the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" *United States v. Larionoff,* 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977) (citations omitted).

FAA Order No. 5050.4 ¶ 23n provides that "[i]ssuance of certificates and related actions under the Airport Certification Program (14 C.F.R. Part 139) is "categorically excluded from the requirement for a formal environmental assessment." Paragraph 24b of that same order, however, requires that an environmental assessment be prepared for a Part 139 certificate when the proposed project is "highly controversial on environmental grounds." The regulations provide that a project is considered highly controversial when "opposed by a Federal, state, or local government agency or by a *substantial number* of the persons affected by such action on environmental grounds." Project opposition must be of an "extraordinary nature." *Town of Orangetown v. Gorsuch,* 718 F.2d 29, 39 (2d Cir.1983), *cert. denied,* 465 U.S. 1099, 104 S.Ct. 1592, 80 L.Ed.2d 124 (1984). Thus, the issue in this case is whether, applying these standards, the FAA was "plainly erroneous" in interpreting its regulations so that the signatories to the WHAC petition did not constitute a "substantial number" of persons and thus WHAC's opposition did not render the issuance of the certificate "highly controversial."

**B.**

We find that the FAA was not "plainly erroneous" in deciding that WHAC's opposition did not render the West Houston Part 139 action "highly controversial." No local, state or federal agency charged with environmental responsibility expressed concern about or opposition to the project.[3] Moreover, the actual number of people who objected to the certification was not large in relation to the population who would be affected by the certification. In 1985, the West Houston area had a total population of 270,782 people. The FAA received only 558 signatures on petitions, representing some 396 households, and about 120 letters opposing the airport expansion. We are unconvinced that WHAC's numbers are so substantial as to reverse the presumption of the categorical exclusion, especially in the absence of any authority indicating that, for the purpose of the regulations, a group of this relative size constitutes "a substantial number of persons."

The mere existence of opposition does not trigger the FAA's duty to prepare an environmental review. Where, as here, public opposition was minimal in relation to the relevant project service area, and no governmental agency opposed the project, the project opposition was not of such an "extraordinary nature" as to require an environmental assessment.

**C.**

Since we find that the FAA was not required to perform an environmental assessment for the Part 139 certificate, we

---

3. The Cypress Fairbanks Independent School District actively opposed the project and the Katy Independent School District expressed concern. The FAA seems to have determined that these local government bodies were not "governmental agencies" within the meaning of the FAA regulations. As this court must defer to the FAA's interpretation of its own regulation, *see City v. Federal Highway Administration,* 756 F.2d at 1020 and that in construing administrative regulations, "the ultimate criterion is the administrative interpretation," *Larionoff,* 431 U.S. at 872, 97 S.Ct. at 2155, we find that this interpretation is reasonable. These school districts were not charged with any responsibility for evaluating environmental impacts, directly or indirectly, and their interests and concerns were of the nature and character of those of the other objecting residents.

need not reach the question of whether the FAA should have considered the cumulative impact of the issuance of both certificates.

## III

For the reasons we have noted, we hold that the FAA was not "plainly erroneous" in determining that an environmental assessment was not necessary, and therefore the issuance of the Airport Operating Certificate to West Houston pursuant to 14 C.F.R. Part 139 is

AFFIRMED.