NATIONAL TRUST FOR HISTORIC
PRESERVATION IN the UNITED
STATES, et al., Appellants,

v.

Elizabeth H. DOLE, et al., Appellees.

No. 85–6182.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 18, 1986.

Decided June 2, 1987.

As Amended Sept. 25, 1987.

C. Michael Buxton, Washington, D.C.,
with whom Travis R. Brewer, David A.
Doheny, and Elizabeth S. Merritt, were on
brief, for appellants.

Charles F. Flynn, Asst. U.S. Atty., Washington, D.C., with whom Joseph E. diGenova, U.S. Atty., Royce C. Lamberth and R.
Craig Lawrence, Asst. U.S. Attys., were on
brief, for appellees Elizabeth H. Dole, et al.

Karen S. Dworkin, Asst. Corp. Counsel,
Washington, D.C., with whom John H.
Suda, Acting Corp. Counsel, D.C., and
Charles L. Reischel, Deputy Corp. Counsel,
D.C., were on brief, for appellee District of
Columbia.

Before STARR and BUCKLEY,
Circuit Judges, and GEORGE H.

REVERCOMB,* U.S. District Judge for the District of Columbia.

Opinion for the Court PER CURIAM.

Opinion concurring in part and dissenting in part filed by Circuit Judge BUCKLEY.

PER CURIAM:

This appeal arises from a dispute over the federally-funded construction of suicide prevention barriers on the Duke Ellington Bridge, an historic landmark in Washington, D.C. Appellants, distressed by the barriers' effect on the appearance of the bridge, seek to require the Federal Highway Administration (FHWA) to evaluate alternatives to and the environmental consequences of the barriers.[1] The District Court found that the FHWA's determination that it was not statutorily bound to conduct such evaluations was not arbitrary and capricious, and granted summary judgment. We affirm.

I

The Duke Ellington Bridge, which spans Rock Creek Park (a national park), is an historic landmark eligible for inclusion in the National Register of Historic Places. The bridge has, unfortunately, become a popular place for suicide; according to the District of Columbia Medical Examiner's Office, 37 suicides occurred from D.C. bridges between January 1979 and June 1985, 21 of which occurred from the Duke Ellington Bridge. Appendix at 124. In an effort to prevent, or at least deter, such suicides, the District of Columbia Department of Public Works decided to erect high, picket-like metal safety barriers along the sides of the bridge.[2]

In September 1984, the Department of Public Works sought and received federal funding for approximately 80 percent of the project from the United States Department of Transportation (the Department) through the FHWA. Due to the FHWA's substantial involvement, it had to contend with the potential applicability of procedural protections contained in two provisions of law: *first*, section 4(f) of the Department of Transportation Act of 1966, 49 U.S.C. § 303(c) (1982), which authorizes the Secretary of the Department to approve a transportation project requiring the use of an historic site only if no prudent and feasible alternative exists and harm to the site is minimized; and *second*, section 102(2)(c) of the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. § 4332(2)(C) (1982), which requires federal agencies to prepare an environmental impact statement on "proposals for ... major Federal actions significantly affecting the quality of the human environment." In conjunction with its funding decision, however, the FHWA determined that construction of the barriers was exempt from the procedural requirements of both statutes.

Preliminary installation work on the bridge thus began on August 20, 1985. Concerned about what they considered the damage to the bridge's appearance, appellants promptly filed suit, claiming that the FHWA's determination that erection of the barriers was not protected by the procedur-

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a) (1982).

1. Appellants are the National Trust for Historic Preservation in the United States, the D.C. Preservation League, the Federation of Citizens Associations of the District of Columbia, the Kalorama Citizens Association, the Reed-Cooke Neighborhood Association, the Woodley Park Community Association, the 18th & Columbia Road Business Association, the Art Deco Society of Washington, and Barry J. Israel.

2. Pursuant to § 106 of the National Historic Preservation Act, 16 U.S.C. § 470f (1982), the FHWA and the Department of Public Works referred the proposal to the District of Columbia State Historic Preservation Officer and the Advisory Council on Historic Preservation. The Preservation Officer and Advisory Council initially objected to the Department of Public Work's determination that the proposed barriers would not adversely affect the architectural and historic character of the bridge, but eventually entered into an agreement with the Department of Public Works and the FHWA governing the installation of the barriers. In this appeal, appellants no longer challenge, as they did without success before the District Court, the adequacy of the FHWA's and the Department of Public Works' compliance with § 106 of the National Historic Preservation Act.

al mandate of NEPA or the Department of Transportation Act was arbitrary and capricious under the Administrative Procedure Act (APA), 5 U.S.C. § 706 (1982).[3] Appellants sought declaratory relief and preliminary and permanent injunctions to halt the erection of the barriers and force the FHWA to evaluate the project under the environmental statutes. On August 29, 1985, the District Court denied appellants' application for a temporary restraining order. Work on the project thus continued until September 20, 1985, when it was voluntarily suspended. Following a bench trial,[4] the District Court issued an opinion and order on October 3, 1985 granting summary judgment in favor of the FHWA, the Department of Transportation, and the Department of Public Works. Construction resumed in December, 1985, and the barriers are now fully in place.[5]

Before us, appellants argue that summary judgment was improperly granted. In reviewing their contentions, we turn first to the Department of Transportation Act, and then to NEPA.[6]

## II. The 4(f) Issue

In their complaint, appellants allege that appellees are in violation of section 4(f) of the Department of Transportation Act "because construction of the proposed barriers would require the use of historic sites, because there are prudent or feasible alternatives to erecting barriers on these bridges and because the proposed barriers do not include all possible planning to minimize harm to the bridges." Complaint at 2–3, Appendix at 94–95. Appellees claim that the installation of suicide prevention barriers does not represent a "use" of bridges within the meaning of section 4(f). We agree with the District Court's conclusion that section 4(f) is not applicable to this case, but for different reasons than those given by the court.

### A. The Statutory Language

Section 4(f) of the Department of Transportation Act reads in pertinent part as follows:

> The Secretary may approve a *transportation program or project* requiring the use of publicly owned *land* of a public park ... or *land of an historic site* ... only if—
>
> (1) there is no prudent and feasible alternative to using that *land;* and

---

**3.** The Department of Public Works also planned to erect suicide prevention barriers on the William Howard Taft Bridge, which, like the Ellington Bridge, spans Rock Creek Park and is eligible for inclusion in the National Register of Historic Places. Before the District Court, appellants sought to enjoin this construction as well. Because no work was being done on the Taft Bridge at that time, however, the District Court determined that the matter was not ripe for review, and dismissed that portion of appellants' complaint without prejudice. *National Trust for Historic Preservation v. Dole*, Civil Action No. 85–2749, mem. op. at 12–13 (D.D.C. Oct. 3, 1985). Appellants do not challenge the District Court's disposition of that issue.

**4.** At trial, appellants introduced evidence with respect to suicide prevention, arguing that suicide is not a site-specific act, and therefore would not be prevented by the barriers (which, in any event, could be surmounted). Appendix at 139–43. Appellants also suggested a number of alternatives to the barriers, such as nets, signs, and community watches. *Id.* at 108, 143, 151.

**5.** The FHWA and the Department moved to dismiss this appeal as moot, arguing that the barriers have been completely installed on the Elling-

ton Bridge. On June 4, 1986, we denied the motion on the ground that, should appellants prevail, the court could order removal of the barriers.

**6.** We note that in a related case, *Butler v. District of Columbia Department of Public Works,* Civil Action No. 0084–86 (D.C.Super.Ct. Mar. 27, 1987), the District of Columbia Superior Court held that the Department of Public Works and Mayor Marion Barry, Jr. had violated the Advisory Neighborhood Commission Act, D.C.Code § 1–261 (1981), by failing, prior to construction of the barriers, to give written notice seeking written recommendations to the Advisory Neighborhood Commissions, to give proper weight to the recommendations of those commissions, and to issue a written rationale for the decision to erect the barriers. The court also held that the Department of Public Works and Mayor Barry had violated the Historic Protection Act, D.C.Code § 5–1005 (1981), by failing to apply for a building permit and to hold a public hearing prior to the construction of the barriers. Those issues are, of course, not before us in this appeal.

(2) the program or project includes all possible planning to minimize harm to the park ... or historic site resulting from the use.

49 U.S.C. § 303(c) (1982) (emphasis added). Thus two requirements must be met before the provisions of section 4(f) may be invoked. First, the program or project to be approved must serve a transportation purpose; that is to say, it must deal with the movement of goods or persons from one place to another.[7] Second, that program or project must require the use of land. Only if these conditions are shown to exist do we need to determine whether the requirements of subsections (1) (a finding that no prudent or feasible alternative exists) and (2) (planning to minimize harm) have been met.

This construction is dictated by the plain meaning of the statutory language, and is required by the Supreme Court's most recent guidance on statutory interpretation:

> If the statute is clear and unambiguous "that is the end of the matter, for the Court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A., Inc. v. National [sic] Resources Defense Council, Inc.,* 467 U.S. 837, 842–43 [104 S.Ct. 2778, 2781, 81 L.Ed.2d 694] (1984). The traditional deference courts pay to agency interpretation is not to be applied to alter the clearly expressed intent of Congress.

*Board of Governors v. Dimension Fin. Corp.,* 474 U.S. 361, 106 S.Ct. 681, 686, 88 L.Ed.2d 691 (1986).

█ Appellants have failed to meet this threshold test. Measures designed to discourage suicides are laudable, but it takes more than a high purpose to clothe them with a transportation purpose. We see no obvious relationship between preventing in-dividuals from leaping off a bridge and facilitating the flow of traffic over it, and appellants have suggested none. We note, further, that in the section of their brief arguing that even an "insubstantial" use of protected lands will suffice to invoke a 4(f) determination, Brief for Appellants at 21–27, each of the cases discussed involves a project or program clearly serving a transportation purpose. *See Louisiana Envtl. Soc'y, Inc. v. Coleman,* 537 F.2d 79 (5th Cir.1976) (construction of a bridge over a protected park); *Falls Road Impact Comm., Inc. v. Dole,* 581 F.Supp. 678 (E.D. Wisc.), *aff'd,* 737 F.2d 1476 (7th Cir.1984) (construction of a bridge and traffic corridor); *Citizen Advocates for Responsible Expansion, Inc. (I-CARE) v. Dole,* 770 F.2d 423 (5th Cir.1985) (expansion of highway from four to eight lanes); *D.C. Fed'n of Civic Ass'ns v. Volpe,* 459 F.2d 1231 (D.C.Cir.1971) (construction of bridge across the Potomac). We therefore conclude that appellants have failed to demonstrate the existence of the requisite transportation purpose. Even if we were to concede that the installation of suicide barriers constituted a transportation program or project, appellants have failed to establish that it involves a use of land within the meaning of section 4(f). *See Sierra Club v. U.S. Dep't of Transp.,* 753 F.2d 120 (D.C.Cir.1985) ("Congress desired that the effect of parkland and other recreational facilities be fully considered during the planning stages of major new physical 'facilities.' Congress gave no indication that section [4(f)] was intended to create ongoing review of relatively minor changes in the operational characteristics of an established transportation facility." *Id.* at 130.)

Thus while we are in accord with the District Court's conclusion that section 4(f) is not applicable to the case before us, we

---

**7.** In its brief, the Department does not explicitly refer to a "transportation purpose." This suggests a possible problem under *SEC v. Chenery Corp.,* 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947) (A reviewing court "must judge the propriety of [an agency's] action solely by the grounds invoked by the agency."). We note, however, that the FHWA had concluded that "the proposed project will not 'use' (in the sense of 4(f)) the historic property by any taking of it, nor does it reduce the valve [sic] or utility of the property *for its intended use.*" Minute Memo of Mike Burke (Aug. 1, 1985) (confirming the Department's 4(f) determination) (Appendix at 26) (emphasis added). As it is self-evident that the "intended use" of the Ellington Bridge is to serve transportation purposes, we conclude that we are not precluded from addressing the issue.

disagree with its rationale. The District Court apparently assumed the case involved a transportation project requiring the use of land but nevertheless decided that section 4(f) could not be invoked because (quoting from *Town of Belmont v. Dole,* 766 F.2d 28, 32 (1st Cir.1985)) the use made of the site was not "adverse in terms of the statute's preservationist purposes, a 'use' that might 'harm' the resources the statute seeks to protect[.]" Whatever the relevance of such a consideration in another case, it has none here because appellants have failed to meet the threshold tests established both by the clear meaning of section 4(f) and our holding in *Sierra Club.*

### III. THE NEPA ISSUE

Appellants also argue the FHWA violated section 102(2)(c) of NEPA and that the District Court applied an incorrect standard of review to the FHWA's determinations. Specifically, appellants contend the FHWA failed to conduct an adequate environmental study of the suicide barrier proposal, and the District Court erred in its application of the "arbitrary or capricious" standard.

NEPA requires an environmental impact statement (EIS) to be filed for "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). The FHWA issued regulations implementing NEPA's requirements pursuant to regulations of the Council on Environmental Quality.[8]

The FWHA has established three classes of actions for determining the level of environmental study necessary. Class I actions, those which "may significantly affect the environment," always require a full EIS. 23 C.F.R. § 771.115(a) (1974). Actions in which the significance of the impact on the environment is "not clearly established," are categorized Class III and require an environmental assessment (EA)

to determine that significance. 23 C.F.R. § 771.115(c) (1974). Under Class II, the FHWA has enumerated twenty-nine categorical exclusions (CE's) which do not require an EIS or EA. These exceptions cover actions that have been predetermined as not having a significant impact on the environment either individually or cumulatively. 23 C.F.R. § 771.115(b) (1974). Nevertheless, the FHWA "may determine that any action proposed as a categorical exclusion may, because of extraordinary circumstances, require appropriate environmental studies to establish the need for an EIS." 23 C.F.R. § 771.117(c) (1974).

The FHWA determined that constructing a suicide barrier on the Duke Ellington Bridge should be exempted from an EIS and EA by CE No. 14, which covers "highway safety ... improvement projects including the correction or improvement of high hazard locations." 23 C.F.R. § 771.-115(b)(14) (1974).

The District Court concluded that the appropriate standard of review of the FHWA's actions is the arbitrary-and-capricious standard of the APA. 5 U.S.C. § 706; *National Trust for Historic Preservation,* mem. op. at 6. The court concluded it was neither arbitrary nor capricious for the FHWA to determine that the barrier proposal was covered by CE 14, and that no EIS or EA was required. *Id.* at 7.

Appellants contend the District Court erred in its application of the arbitrary-and-capricious standard, however, because it failed to utilize a four-part test enumerated by this circuit,[9] to determine if the FHWA's actions were arbitrary or capricious. *See Mid-Tex Electric Cooperative v. FERC,* 773 F.2d 327, 339 (D.C.Cir.1985). Apparently it is appellants' position that, in failing to apply this *Mid-Tex* test, the District Court did not sufficiently analyze whether the FHWA's actions were arbitrary or capricious. The *Mid-Tex* test is

---

8. *See* 40 C.F.R. § 1500.0 *et seq.* (1985). This Council is established pursuant to and derives its authority from NEPA.

9. (1) Whether the agency took a "hard look" at the problem; (2) whether the agency identified the relevant areas of environmental concern;

(3) as to the problems studied and identified, whether the agency made a convincing case that the impact was insignificant; and (4) if there was an impact of true significance, whether the agency convincingly established that changes in the project sufficiently reduce it to a minimum.

employed in this circuit to review an agency's finding of "no significant impact" on the environment, thereby precluding the necessity of an EIS. This test has only been applied, however, to review an agency's determination of "no significant impact," *after* the agency had required an EA. The test is narrowly tailored to the specific review of whether the agency sufficiently analyzed the significance of the impact. *Id.* at 339.[10]

The District Court was reviewing the FHWA's determination to invoke a categorical exclusion, not a decision to conduct an EA nor a finding of "no significant impact." The standard of review to apply to agency determinations assigning a categorical exclusion has not been previously addressed in this circuit. The circuits are split on whether to apply a "reasonableness" or "arbitrary or capricious" standard of review to EA, EIS, and CE determinations; however, the courts apply their respective standard consistently to each such review. *Cf. West Houston Air Committee v. FAA*, 784 F.2d 702, 704 (5th Cir.1986) ("reasonableness" standard applied for EA decision); *Vieux Carre Property Owners, Residents and Associates, Inc. v. Pierce*, 719 F.2d 1272, 1279 (5th Cir.1983) ("reasonableness" standard applied for EIS decision); *City of Alexandria, Va. v. FHWA*, 756 F.2d 1014, 1017 (4th Cir.1985) ("arbitrary or capricious" standard would apply to review of EIS, CE, or any agency action).

 The District Court correctly utilized the "arbitrary or capricious" standard of review [11] applied consistently in this circuit for judicial review of agency actions under the APA. However, the District Court was not compelled to utilize the four-part *Mid-Tex* test, as this analysis is not applicable to the review of the CE decision which was before the court. By definition, CE's are categories of actions that have been predetermined not to involve significant environ-

mental impacts, and therefore require no further agency analysis absent extraordinary circumstances. 23 C.F.R. § 771.117(a) (1974). In other words, traditional arbitrary-and-capricious review is sufficient where the question is whether the FHWA properly invoked a CE.

The record that was before the FHWA was thoroughly reviewed by the District Court. The District of Columbia Department of Public Works had studied and planned the erection of the suicide barriers, and had determined that the proposed barriers would not adversely affect the architectural and historic character of the Ellington Bridge. Pursuant to the National Historic Preservation Act, the proposal was reviewed by the Advisory Council on Historic Preservation and the District of Columbia State Historic Preservation Officer who, despite initial objections, eventually entered into a Memorandum of Agreement approving the installation of the barriers. *See supra* note 2. The FHWA determined the project was excluded from NEPA under CE No. 14, and that no extraordinary circumstances existed warranting further evaluation. *National Trust for Historic Preservation*, mem. op. at 2–3.

Appellants contend the FHWA should have applied CE No. 9, which covers a "modification of an existing bridge structure," rather than CE No. 14, which covers "highway safety ... improvement projects." 23 C.F.R. § 771.115(b)(10), (14) (1974). As the District Court emphasized, the two CE's are distinguishable.

Exclusion 9 refers to major changes in a bridge itself, such as adding lanes, bikepaths, etc., ... which are virtually irrevocable and substantially alter the structure of the bridge. It is not unreasonable, and *a fortiori* neither arbitrary nor capricious, to conclude that the addition of barriers which are not irrevocable alterations substantially altering the structure of the bridge would be more akin to

---

10. *See also Sierra Club v. Peterson*, 717 F.2d 1409, 1413 (D.C.Cir.1983); *Cabinet Mountains Wilderness v. Peterson*, 685 F.2d 678, 681–82 (D.C.Cir.1982); *MNCPPC v. U.S. Postal Service*, 487 F.2d 1029, 1036–37 (D.C.Cir.1973).

11. For the sake of argument the District Court also analyzed the FHWA's decisions under the broader "reasonableness" standard, reaching the same conclusion.

a safety provision than to a reconstruction or modification of a bridge.

*National Trust for Historic Preservation,* mem. op. at 7.

■ After reviewing the record that was before the FHWA, the District Court properly deferred to the agency's interpretation of its own regulations. Administrative agencies are entitled to wide latitude in interpreting their own regulations.

> When construction of an agency regulation is in issue, courts owe great deference to the interpretation adopted by the agency and will uphold that interpretation if it is reasonable and consistent with the regulation. The court need not find the agency's construction is the only possible one, or even the one that the court would have adopted in the first instance.

*Belco Petroleum Corp. v. FERC,* 589 F.2d 680, 685 (D.C.Cir.1978). The administrative interpretation is controlling, "unless it is plainly erroneous or inconsistent with the regulation," *United States v. Larionoff,* 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977) (quoting *Bowles v. Seminole Rock Co.,* 325 U.S. 410, 413–14, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)). The District Court was correct in concluding the FHWA was not arbitrary or capricious in its compliance with section 102(2)(c) of NEPA.

Accordingly, the judgment of the District Court is, in all respects,

*Affirmed.*

BUCKLEY, Circuit Judge, concurring in part and dissenting in part:

While I agree that section 4(f) of the Department of Transportation Act does not apply to this case, I cannot concur in the conclusion that the Federal Highway Administration has complied with the requirements of the National Environmental Policy Act.

Much is made of the FHWA's determination that the barriers were not "irrevocable alterations substantially altering the structure of the bridge." *National Trust for Historic Preservation v. Dole,* Civil Action No. 85–2749, mem. op. at 7; *see also* Brief for Appellees (federal) at 18. Human nature being a constant, however, the psychological and physical factors that have made the Ellington Bridge a favored platform for plunges to eternity are not apt to disappear over time. Therefore, even though the suicide barriers can easily be dismantled, as a practical matter they must be regarded as permanent accretions. As the preservation of the *appearance* of a historic structure is clearly one of the principal values the law is intended to protect, I am not sure how much comfort one is entitled to take from the knowledge that if and when the barriers are removed, little physical damage will have been done to the structure.

The FHWA did not address the extent of the environmental impact of the proposed barriers on the appearance of the Ellington Bridge because, it decided, the project fell within one of the categories of action excludable from the NEPA process in that the barriers "do not individually or cumulatively have a significant effect on the environment." 23 C.F.R. § 771.115(b) (1986). I do not quarrel with its conclusion that Categorical Exclusion No. 9 (which deals with "reconstruction or modification of an existing bridge structure") does not cover the kind of work proposed to frustrate would-be suicides, at least at that particular site. It is worth noting, however, that Categorical Exclusion No. 9 specifically excepts "bridges on or eligible for inclusion on the National Register," 23 C.F.R. § 771.115(b)(9) (1986), which underscores the FHWA's earlier conclusion that a proposal to modify such structures must be assessed on a case-by-case basis.

What I do object to is the willingness of this court to accept at face value the FHWA's conclusion that Categorical Exception No. 14 *does* apply. To demonstrate how irrelevant that exception is to the case before us, I quote the pertinent part in full: "Highway safety or traffic operations improvement projects including the correction or improvement of high hazard locations; elimination of roadside obstacles; highway signing; pavement markings; traffic control devices; railroad warning devices; and lighting." 23 C.F.R. § 771.115(b)(14)

(1986). In short, the exception contemplates changes and installations that are designed to lessen the risks that vehicles will collide with other vehicles or run over unwary pedestrians. It stretches belief that the drafter of Categorical Exclusion No. 14 could have intended to include, among the "highway safety or traffic operations improvement projects" to be excepted from the NEPA process, measures designed to prevent distraught human beings from jumping to their deaths *away* from the highway and the flow of traffic.

When an agency must rely on a forced interpretation of one of its regulations as the only means of circumventing the clear requirement of another, I can only conclude that that agency has acted in an arbitrary and capricious manner. I therefore believe that this case should be remanded with instructions that the FHWA be directed to prepare an environmental assessment as required by 23 C.F.R. § 771.115(c) (1986).