**CITY OF NEW YORK, Petitioner,**

v.

**INTERSTATE COMMERCE COMMISSION and United States of America, Respondents.**

Nos. 1508, 1509, Docket 92–4239, 93–4015.

United States Court of Appeals, Second Circuit.

Argued May 12, 1993.

Decided Sept. 10, 1993.

Paul E. Kazanoff, New York City (O. Peter Sherwood, Corp. Counsel, Gail Rubin, New York City, of counsel), for petitioner, City of New York.

Laurence H. Schecker, Washington, DC (Robert S. Burk, Gen. Counsel, Ellen D. Hanson, Sr. Associate Gen. Counsel, Evelyn G. Kitay, Atty., I.C.C., John A. Bryson, Atty., Dept. of Justice, Washington, DC, of counsel), for respondents, I.C.C. and U.S. of America.

Before: MINER, FRIEDMAN,* and McLAUGHLIN, Circuit Judges.

FRIEDMAN, Circuit Judge:

The City of New York (City) petitions for review of two Interstate Commerce Commission (Commission) decisions authorizing four bus companies to operate between New Jersey and Manhattan. The City argues that the Commission improperly failed to require an environmental assessment of the cumulative effect that the additional bus service would have on Manhattan's air quality, as the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. §§ 4321–4370d (1988), allegedly required. We deny the petitions for review.

## I.

### A. *The Regulatory Scheme*

NEPA directs that "to the fullest extent possible," all federal agencies shall

> include in every recommendation or report on * * * major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on (i) the environmental impact of the proposed action.

42 U.S.C. § 4332(2)(C)(i) (1988).

Both the Council on Environmental Quality (CEQ) and the Commission have promulgated regulations governing the agency's obligations and responsibilities in applying NEPA. *See* 40 C.F.R. §§ 1500–1508 (1992) (CEQ); *Implementation of Environmental Laws,* 7 I.C.C.2d 807 (1991) (codified at 49 C.F.R. § 1105 (1992)) (Commission). Those regulations describe three categories of agency action and specify the kind of agency review of environmental issues that is required for each. The categories are: (1) actions that may significantly affect the environment and thus generally require a full environmental impact statement ("EIS"), 40 C.F.R. § 1501.4(a)(1), 49 C.F.R. §§ 1105.4(f),

* DANIEL M. FRIEDMAN, of the United States Court of Appeals for the Federal Circuit, sitting by designation.

1105.6(a); (2) actions that may or may not have a significant environmental impact and thus ordinarily require only a more limited environmental assessment ("EA") to determine whether an EIS is necessary, 40 C.F.R. § 1501.4(c), 49 C.F.R. §§ 1105.4(d), 1105.6(b); and (3) actions that typically do not have a significant effect on the human environment and thus qualify for a "categorical exclusion" from the requirements for the preparation of an EA or an EIS, 40 C.F.R. §§ 1500.4(p), 1501.4(a)(2) and 1508.4; 49 C.F.R. § 1105.-6(c). The agency determines the category covering its proposed action. *Cross–Sound Ferry Servs., Inc. v. United States,* 573 F.2d 725, 731 (2d Cir.1978).

The CEQ regulation defines "categorical exclusion" (CE) as follows:

> "Categorical exclusion" means a category of actions which do not individually or cumulatively have a significant effect on the human environment and which have been found to have no such effect in procedures adopted by a Federal agency in implementation of these regulations ... and for which, therefore, neither an [EA] nor an [EIS] is required.... Any procedures under this section shall provide for extraordinary circumstances in which a normally excluded action may have a significant environmental effect.

40 C.F.R. § 1508.4.

The regulation further states that agencies are to use "categorical exclusions to define categories of actions which do not individually or cumulatively have a significant effect on the human environment and which are therefore exempt from requirements to prepare an environmental impact statement [EIS]." 40 C.F.R. § 1500.4(p). "In determining whether to prepare an [EIS] the Federal agency shall: (a) Determine under its procedures supplementing these regulations ... whether the proposal is one which: ... (2) Normally does not require either an [EIS] or an [EA] (categorical exclusion)." 40 C.F.R. § 1501.4(a)(2).

The Commission has adopted a categorical exclusion, for which "[n]o environmental documentation will normally be prepared," covering motor carrier (including bus) licensing.

49 C.F.R. § 1105.6(c)(1). The regulation further provides, however, that:

> [t]he Commission may reclassify or modify these requirements for individual proceedings. For actions that generally require no environmental documentation, the Commission may decide that a particular action has the potential for significant environmental impacts and that, therefore, the applicant should provide an environmental report and either an EA or an EIS will be prepared.

49 C.F.R. § 1105.6(d).

Under the statute governing the issuance of motor carrier operating certificates, the Commission is to issue such a certificate if it finds that the applicant "is fit, willing, and able to provide the transportation to be authorized by the certificate ..., unless the Commission finds, on the basis of evidence presented by any person objecting to the issuance of the certificate, that the transportation to be authorized by the certificate is not consistent with the public interest." 49 U.S.C. § 10922(c)(1)(A) (1988).

B. *The Commission Proceedings.*

The four applicants sought Commission authority to provide passenger service between Staten Island and Manhattan via New Jersey and between Manhattan and New Jersey. Three of the applicants had not previously applied for Commission operating authority; the fourth applicant was an ·established bus company.

The City filed virtually identical protests to the applications. According to the city, the

> proposed service is likely to worsen the already unhealthy levels of particulate air pollution in the Borough of Manhattan, and the I.C.C. should not grant any operating authority until the cumulative environmental impacts of an additional carrier operating into Manhattan are adequately considered....
>
> 3. Manhattan has recently been preliminarily cited by the Environmental Protection Administration [sic] as "nonattainment" for toxic particulate matter emissions, which result from diesel-fueled buses. In view of these conditions, it can no

longer be presumed, as is done by current I.C.C. regulations, that all motor carrier actions have no significant environmental impacts sufficient to trigger the reporting requirements of [NEPA].

The City requested the Commission (1) to deny the application until the Commission had made an environmental assessment of the cumulative impact of the proposed operation in combination with other operations into Manhattan; and (2) pursuant to 49 C.F.R. § 1105.6(d), to waive or modify in these cases (and future motor carrier applications for service into Manhattan) the Commission regulation that provides a categorical exclusion for all motor carrier licensing proceedings.

In a preliminary investigation, the Commission's environmental staff asked the City whether it had "authority to require motor carriers licensed by the I.C.C., and operating within the City's jurisdiction, to install trap oxidizers . . . . [,] which have been installed on a large portion of the bus fleet of the New York City Transit Authority to reduce emissions of particulate air pollution." The City replied that it "would have authority, under its police power to promote public health and safety, to require that I.C.C.-licensed motor carriers operating in Manhattan be similarly equipped with trap oxidizers or equivalent devices." The City also stated, however, that with respect to those vehicles, it can prevent environmental harm only "by imposing punitive measures, such as summonses and fines, on vehicles that are not equipped with pollution control devices. Not only are these measures expensive and difficult to administer, but they are likely to result in only sporadic compliance. It would be far more efficient for these environmental problems to be addressed before the vehicles are licensed and permitted to operate." The City also questioned the relevancy of its police power to the Commission's responsibility to address environmental problems under NEPA. The Commission denied the City's protests and granted the applications. In its principal opinion, dealing with three of the applicants, the Commission ruled that "the record here does not support the City's view that a grant of these applications will contribute to pollution caused by diesel-fueled vehicles in Manhattan in any significant way." The Commis-

sion noted that these "are new entrants to a market that is already heavily served by passenger carriers." After referring to the City's acknowledgement that its police power would authorize it "to require that I.C.C.-licensed motor carriers operating in Manhattan be similarly equipped with trap oxidizers or equivalent devices," the Commission stated:

> Moreover, the record here also shows that the City can implement—and already is implementing—other measures to achieve lower particulate emissions, such as converting city buses to fuels that will burn more cleanly, improving inspection and maintenance for diesel vehicles, and enforcing more strictly the existing regulations on vehicle idling and limits on hours that trucks may use city streets.
>
> In these circumstances, it seems to us plainly inappropriate to impose special restrictions on *new* entrants in an attempt to solve Manhattan's air pollution problems. The appropriate approach, we believe, is for the City to enforce, across the board, its emission standards and other requirements for buses. This Commission is not the proper entity for developing or enforcing bus emission standards. The City has the jurisdiction—and is best suited—to address the air pollution problems raised here, because it is most attuned to the specific interests and needs of the local community.

[footnote omitted].

The Commission "conclude[d] based on the record here, that the City has not demonstrated that an environmental analysis by us is needed in these cases. Rather, it is within the City's own purview to take appropriate steps, across the board, to address the air pollution problems it raises in its protest." [footnote omitted].

Finally, the Commission denied the City's request that it modify its categorical exclusion "to require environmental assessments of all passenger carrier applications to serve Manhattan. We can address requests to waive or modify our requirements for individual proceedings where appropriate, under 49 CFR § 1105.6(d)."

## II.

The issue before us is narrow. The Commission has categorically excluded from NEPA's environmental requirements, as the regulations permit, all motor carrier licensing, and the City does not challenge that general exclusion. The regulation provides that the Commission "may decide that a particular action has the potential for significant environmental impacts and that, therefore, the applicant should provide an environmental report and either an EA or an EIS will be prepared." 49 C.F.R. § 1105.6(d). The Commission concluded that the grant of the four bus operating licenses here involved did not have the "potential for significant environmental impacts" that is required before the Commission will decide "that a particular action" requires the applicant to "provide an environmental report" that will trigger the preparation of an EA or an EIS.

"By definition, CE's [categorical exclusions] are categories of actions that have been predetermined not to involve significant environmental impacts, and therefore require no further agency analysis absent extraordinary circumstances." *National Trust for Historic Preservation in the United States v. Dole*, 828 F.2d 776, 781 (D.C.Cir.1987) (per curiam); *see* 40 C.F.R. § 1508.4 (categorical exclusions "shall provide for extraordinary circumstances in which a normally excluded action may have a significant environmental effect"). The Commission's exception to its categorical exclusion of motor carrier licensing from NEPA requirements for a "particular action" in its regulation § 1105.6(d) obviously was intended to reflect the CEQ's requirement that in granting categorical exclusions provision must be made "for extraordinary circumstances in which a normally excluded action may have a significant environmental effect." 40 C.F.R. § 1508.4.

■ The City has not shown, and made no attempt to show, that granting these four bus operating licenses would involve "extraordinary circumstances." Instead, it argues only that the Commission improperly failed to consider the cumulative effect of prior Commission bus authorizations to serve Manhattan upon the serious air pollution problems that area has. It cites a number of cases, including three from this Court, *see Village of Grand View v. Skinner*, 947 F.2d 651, 659 (2d Cir.1991); *Natural Resources Defense Council, Inc. v. Callaway*, 524 F.2d 79, 87–90 (2d Cir.1975); *Hanly v. Kleindienst*, 471 F.2d 823, 830–31 (2d Cir.1972), *cert. denied*, 412 U.S. 908, 93 S.Ct. 2290, 36 L.Ed.2d 974 (1973), for the proposition that the agency "must consider each application in the context of the cumulative impacts of the proposal with other operations having similar environmental effects in the same geographical area."

Those cases, however, involved the question whether cumulative effect must be considered in determining whether and how NEPA's requirements applied to the particular agency action. This case does not present that issue, but the narrower question whether the Commission properly refused to except from its categorical exclusion of all motor vehicle licensing these four particular bus license applications.

Under the Commission's regulation, the answer to that question turns on whether there is something about these four "particular action[s]" that creates an "extraordinary circumstance." The alleged cumulative effect of prior grants of operating authority to other bus lines to serve Manhattan does not meet that test in this case.

The regulatory touchstone for exceptions to the categorical exclusion of motor vehicle licensing is the potential environmental impact of the "particular action" before the agency—here the particular bus license. The environmental impact of that action did not increase because of prior Commission authorizations of other bus service to Manhattan. The Commission has formulated its standard for granting exceptions in terms of the environmental impact of the particular transaction it is considering, and the City has not challenged that standard. Under its regulation, the Commission properly evaluated the environmental impact of the four licenses it was considering in terms of the environmental effect of these licenses, without regard to prior bus service it had authorized. As noted, the City does not contend that these four new bus operations to Manhattan

themselves would have a significant environmental impact, much less amount to extraordinary circumstances.

■ The City argues that the Commission "cannot use the city's power to enforce environmental laws to avoid its duty under NEPA to prepare an environmental analysis." That argument, however, assumes the very point at issue: whether the Commission had a "duty under NEPA to prepare an environmental analysis." In deciding whether to exempt these bus licenses from its categorical exclusion for all motor carrier licensing, the Commission justifiably considered whether the City could take appropriate and effective steps to deal with the alleged increase in pollution that the additional buses would cause in Manhattan. If, as the Commission concluded, the City could do so, that was a strong factor militating against the need to require special environmental consideration of the effect of these buses. *Cf. Audubon Soc'y of Cent. Ark. v. Dailey,* 977 F.2d 428, 435–36 (8th Cir.1992) ("An agency may certainly base its decision of 'no significant impact' [in an EA] on mitigating measures to be undertaken by a third party.").

The Commission's opinions provide a detailed, well-reasoned and convincing explanation of the reasons that led the agency to conclude that a waiver of its categorical exclusion from NEPA requirements would not be appropriate. That decision is entitled to substantial deference. *Cf. West Houston Air Comm. v. Federal Aviation Admin.,* 784 F.2d 702, 704–05 (5th Cir.1986). We cannot say that in so concluding the Commission abused its discretion or committed other legal error.

The petitions for review are denied.