**HELLS CANYON PRESERVATION COUNCIL, Plaintiff,**

v.

**UNITED STATES FOREST SERVICE, Defendant.**

**Civ. No. 94–354–JO.**

United States District Court, D. Oregon.

March 29, 1995.

Gary Keith Kahn, Reeves Kahn & Eder, Portland, OR, for plaintiff.

Kristine Olson Rogers, U.S. Atty., D.Or., Thomas C. Lee, Asst. U.S. Atty., U.S. Atty's. Office, Arno Reifenberg, Portland, OR, for defendant.

## OPINION AND ORDER

ROBERT E. JONES, District Judge:

This action is a challenge to the decision of defendant United States Forest Service ("USFS") to relocate a portion of the Lord Flat Road within the Hells Canyon National Recreation Area. Plaintiff contends that the USFS failed to adequately consider the environmental effects of the road relocation, including whether a road in the present location is appropriate at all, in violation of the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 et seq. Plaintiff also contends that another portion of the existing Lord Flat Road lies within the boundary of the Hells Canyon Wilderness Area in violation of the Wilderness Act, 16 U.S.C. § 1131 et seq., and must be closed.

The case is before me on the parties' cross-motions for summary judgment. After considering the arguments of the parties and the supporting evidence, defendant's motion (# 10) is GRANTED and plaintiff's motion (# 33) is DENIED.

**1.** For a brief history of the roadless area reviews, *see National Audubon Soc. v. U.S. Forest Service,*

## BACKGROUND

The Hells Canyon National Recreation Area ("Hells Canyon NRA") was established by Congress in 1975. P.L. 94–199, 16 U.S.C. § 460gg et seq. (the "Act"). The Act directed the Secretary of Agriculture to administer the recreation area in a manner compatible with several objectives, including "the continuation of such existing uses and developments as are compatible with the provisions of this Act." 16 U.S.C. § 460gg–4(7). The Act also directed the Secretary to prepare a comprehensive management plan that was to "provide for a broad range of land uses and recreation opportunities." 16 U.S.C. § 460gg–5. As part of the comprehensive planning process, the Secretary was to

"conduct a detailed study of the need for, and alternative routes of, scenic roads and other means of transit to and within the recreation area. In conducting such study, the Secretary shall consider the alternative for upgrading existing roads and shall, in particular, *study the need for and alternative routes of roads or other means of transit providing access to scenic views of and from the Western rim of Hells Canyon.*" 16 U.S.C. § 460gg–5(c) (emphasis added).

The Act also established the Hells Canyon Wilderness, to be administered in accordance with the Act or the Wilderness Act, whichever is most restrictive. 16 U.S.C. § 460gg–1. The Wilderness Act forbids the use of motorized vehicles in wilderness areas. 16 U.S.C. § 1133(c).

In 1979, after the Hells Canyon NRA was established but before the comprehensive planning process was completed, the USFS undertook the second of two national reviews of roadless areas, know as Roadless Area Review and Evaluation, RARE II.[1] The entire Lord Flat Road, including the relocated portion at issue in this case, lies within what was designated in RARE II as the "Snake River Roadless Area." Approximately 20 miles of unimproved roads, including the Lord Flat Road, existed in the roadless area.

4 F.3d 832, 834–35 (9th Cir.1993).

Pursuant to the provisions of NEPA, the USFS published the Final Environmental Impact Statement ("FEIS") and Comprehensive Management Plan ("CMP") addressing the administration of the Hells Canyon NRA in 1981. With minor changes, both were approved by the Chief of the USFS in 1982. As pertinent here, Alternative C of the FEIS, which was adopted, includes a transportation plan that addresses the Lord Flat Road as follows:

> Keep the existing road from Warnock Corral to Lord Flat airstrip open to public use. Make only minor improvements to prevent resource damage. The road will remain passable, for the most part, by 4–wheel drive vehicles. Close all side roads between Memaloose and Lord Flat airstrip. FEIS at 133.

The transportation plan in the CMP follows that directive and provides:

> **Lord Flat–Somers Point Road.** Upgrade the existing road from Memaloose to Warnock Corral to provide for low speed travel (up to 25 mph) by sedan and for resource protection. Improve to a single lane, gravel surface standard with adequate turnouts and drainage facilities. Develop a trailhead at Warnock Corral. *Leave the existing road from Warnock Corral to Lord Flat airstrip in its present condition, suitable for 4–wheel drive vehicles only. Make only minor improvements and/or realignment changes needed for resource protection.* Prohibit motorized travel on the side roads leading from Memaloose to Lord Flat airstrip road. CMP at 5 (emphasis added).

The FEIS allocated land within the Hells Canyon NRA into several management areas. No "roadless areas" as such were retained.[2] The CMP designates the area in which the Lord Flat Road lies as a Dispersed Recreation/Native Vegetation area. The CMP further provides that "[t]he road from Warnock Corral to Lord Flat Airstrip will be open for motorized use but the side roads will be closed." CMP at 22.

In 1989, the Hells Canyon NRA Ranger learned that a 1.5–mile segment of the Lord Flat Road, beginning at Warnock Corral and extending north, was within the Hells Canyon Wilderness Area. The Ranger closed the road to motorized travel at the wilderness boundary.

In 1992, after exploring various alternatives to correct the situation, including the possibility of a legislative adjustment to the wilderness boundary to exclude that portion of the Lord Flat Road, the Ranger decided to relocate the road outside the wilderness area. The Ranger found that the road relocation project was within the categories of actions excluded from the requirement of an environmental impact statement ("EIS") or an environmental assessment ("EA") under NEPA. *See* 40 C.F.R. § 1508.4 (categorical exclusions). He also found that there were no extraordinary circumstances associated with the proposed action that would cause significant impact on the physical, biological, or social environment.

The Ranger's decision to relocate the road was disclosed in a Decision Memo dated July 22, 1992. Plaintiff appealed the Ranger's decision to the Forest Supervisor on July 31, 1992, and sought a stay of the decision. The Supervisor denied plaintiff's request for a stay on August 6, 1992. The Regional Forester refused to review that denial. In November 1992, the Supervisor denied plaintiff's appeal on the merits.

The road construction occurred on August 3 through 7, 1992, at a cost of approximately $7,000. The portion of Lord Flat Road within the wilderness area was closed.

### STANDARDS

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). If the moving party shows that there are no genuine issues of material fact, the nonmov-

---

2. The Senate Committee on Energy and Natural Resources report accompanying the Oregon Wilderness Act of 1984, P.L. 98–328, states that "[t]he Committee ... expects the management of all other roadless areas included in P.[L]. 94–199 to be managed according to the direction provided within the Hells Canyon National Recreation Area Comprehensive Management Plan." S.Rep. No. 98–165, 98th Cong., 2d Sess. (1984).

ing party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of America v. Phelps Dodge*, 865 F.2d 1539, 1542 (9th Cir.1989).

The substantive law governing a claim determines whether a fact is material. *T.W. Elec. Service v. Pacific Elec. Contractors*, 809 F.2d 626, 630 (9th Cir.1987). Reasonable doubts as to the existence of a material factual issue are resolved against the moving party. *Id.* at 631. Inferences drawn from facts are viewed in the light most favorable to the nonmoving party. *Id.* at 630–31. Of course, "the favoritism toward the nonmovant in drawing inferences applies only after a court ... has found that a clear 'choice of inferences' actually exists." Edward J. Brunet, Martin H. Redish, & Michael A. Reiter, Summary Judgment: Federal Law and Practice § 3.05, at 84 (1994) (referred to herein as "Brunet").

The USFS's decision to relocate the road is reviewed under the "arbitrary and capricious" standard set forth in section 10(e) of the Administrative Procedures Act, 5 U.S.C. 706(2)(A). *See, e.g., Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 376, 109 S.Ct. 1851, 1860–61, 104 L.Ed.2d 377 (1989); *see also National Audubon Soc. v. U.S. Forest Service*, 4 F.3d 832, 838 n. 5 (9th Cir. 1993), *as amended on denial of rehearing*, 46 F.3d 1437 (1994) (Forest Service's decision not to prepare EIS is reviewed under deferential arbitrary and capricious standard). The USFS's decision to invoke a categorical exclusion is also reviewed under the "arbitrary and capricious" standard. *Nat. Trust for Historic Preservation v. Dole*, 828 F.2d 776, 781 (D.C.Cir.1987).

## DISCUSSION

I. *Relocation of Lord Flat Road.*

Plaintiff asserts that the USFS was required to prepare an EIS before proceeding

with construction. Relying on *City of Tenakee Springs v. Block*, 778 F.2d 1402 (9th Cir. 1985), and *National Audubon Soc., supra*, plaintiff argues that the decision to undertake construction activities in a previously "roadless and undeveloped" area is a new decision subject to all the requirements of NEPA.

The USFS contends that no roadless area is involved in this dispute because the FEIS reclassified the area involved as Dispersed Recreation/Native Vegetation. The USFS argues that the environmental consequences of that land allocation were thoroughly examined and the necessary EIS was prepared and approved in 1982, too long ago to be challenged now. *See Idaho Conservation League v. Mumma*, 956 F.2d 1508, 1516 (9th Cir.1992) (time to challenge an EIS for a Forest Plan is when the approval is given to the Plan, not later when a project is proposed). The USFS further argues that the decision to keep Lord Flat Road open was made in 1982 with the adoption of Alternative C, and that the Ranger's later decision to relocate a portion of the road is consistent with Congressional intent and the CMP, and merely implemented that earlier decision.

NEPA is the basic national charter for protection of the environment. *See* 40 C.F.R. § 1500.1. Under regulations issued by the Council on Environmental Quality,[3] federal agencies must implement procedures to, among other things, make the NEPA process more useful to decisionmakers and the public, to reduce paperwork and the accumulation of extraneous background data, and to emphasize real environmental issues and alternatives. 40 C.F.R. § 1500.2(b). One of the tools mandated for achieving those goals is the use of categorical exclusions. A "categorical exclusion" is defined as:

> "a category of actions which do not individually or cumulatively have a significant effect on the human environment and which have been found to have no such

---

**3.** The regulations, found at 40 C.F.R. Parts 1500 through 1508, "are binding on all federal agencies for implementing the procedural provisions

of [NEPA]." 40 C.F.R. § 1500.3; *see also Sierra Club v. Penfold*, 857 F.2d 1307, 1312 n. 9 (9th Cir.1988).

effect in procedures adopted by a Federal agency in implementation of these regulations (§ 1507.3) and for which, therefore, neither an environmental assessment nor an environmental impact statement is required."

40 C.F.R. § 1508.4. Federal agencies must adopt procedures that include "specific criteria for and identification of" classes of actions that "normally do not require either an [EIS] or an [EA] (categorical exclusions (§ 1508.4))." 40 C.F.R. § 1507.3; *see also* 7 C.F.R. § 1b.3(b).

Pursuant to these regulations, the USFS Environmental Policy and Procedures Handbook specifies certain categories of actions that are excluded from the requirement of an EIS or an EA. As pertinent here, section 26.1b(2) of the handbook categorically excludes "[c]onstruction of low-impact facilities or improvements ... and other low-standard roads, such as traffic service level "D" roads...." Plaintiff does not appear to dispute that Lord Flat Road qualifies as a traffic service level "D" road.

In determining whether to prepare an environmental impact statement, a federal agency must first determine, "under its procedures supplementing these regulations," whether the proposal is one which:

> (1) Normally requires an environmental impact statement or

> (2) Normally does not require either an environmental impact statement or an environmental assessment (categorical exclusion). 40 C.F.R. § 1501.4.

In this case, it appears that the Ranger followed USFS procedures, concluding that:

> This action falls under Categories of Actions Excluded from Analysis in an Environmental Impact Statement or Environmental Assessment (40 CFR 1508.4). The specific citation is Section 26.1b, Categories Established by the Chief, Number 2, Construction of Low–Impact Facilities or Improvements, such as Traffic Service Level D Roads (FSH 1909.15, Amendment 91–1).

Plaintiff asserts that the Ranger's finding that the challenged action falls under a categorical exclusion was based on an erroneous assumption that the Lord Flat Road is required to exist. Plaintiff theorizes that the road that was intended to be kept open was the road as it actually existed, part of which was located illegally within the wilderness area. Plaintiff concludes that "[s]ince a portion of that road was illegally located, the CMP direction has no effect. [T]he Wilderness Act required the Forest Service to close the challenged portion of the road; nothing requires it to be rebuilt."

The Ranger gave three reasons for his decision to relocate Lord Flat Road: (1) relocation was consistent with Congressional intent to provide access to the Western rim of Hells Canyon (16 U.S.C. § 460gg–5); (2) relocation was consistent with the directives of the CMP ("The road from Warnock Corral to Lord Flat Airstrip will be open for motorized use"); and (3) relocation preserves traditional motorized recreation use patterns associated with Lord Flat Road. The Ranger found that relocation was compatible with the management objectives for the Dispersed Recreation/Native Vegetation land allocation, as well as the standards and guidelines in the Wallowa–Whitman Land and Resource Management Plan.

Citing Judge Marsh's statement *National Audubon Soc. v. United States Forest Service,* Civ. No. 90–811–MA, 1990 WL 310513 (November 21, 1990), that "[i]t is undisputed that once a roadless area is developed through logging and road construction, it is irrevocably and irreversibly changed," (Slip. Op. at 10), plaintiff argues that an EIS or, at the very least, an EA is always required before constructing a road in a roadless area. While I agree that in many circumstances, the USFS may be required to prepare an EIS or EA before constructing a road in an area that an on-site evaluation demonstrates to be roadless and undeveloped, I conclude that the USFS's decision in this case complied with the requirements of NEPA and was proper.

Contrary to plaintiff's view, the environmental analysis in the FEIS and the implementing CMP approved in 1982 go far beyond merely allocating certain lands to "wilderness" or "non-wilderness" status. Thus, *City of Tenakee Springs* and *National Audu-*

*bon Soc., supra,* relied upon by plaintiff, are inapposite. The management directive contained in the CMP for Dispersed Recreation/Native Vegetation areas, such as the area in which Lord Flat Road (including the relocated portion) lies, contemplates motorized vehicle use and specifically states that "[t]he road from Warnock Corral to Lord Flat Airstrip *will be open for motorized use.*" I disagree with plaintiff's argument that the mistaken inclusion of part of that road within the wilderness area somehow defeats Congressional intent or the clear directives of the FEIS and CMP that the road remain open to motorized use by the public.

Moreover, an EIS is required only for "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). Although the Ranger ultimately invoked a categorical exclusion, he also found that the individual or cumulative environmental effects on the human environment would be negligible. The Ranger enlisted an interdisciplinary team of USFS resource specialists, consisting of a recreation specialist, landscape architect, transportation planner, archaeologist, wildlife biologist, hydrologist, fisheries biologist, botanist, range conservationist, and environmental coordinator, to analyze the proposed action. Based upon their analysis, public input, and his own experience and professional judgment, the Ranger concluded that

> "Relocation is extremely limited in both context and intensity (40 CFR 1508.27).... [T]he relocation will produce negligible environmental effects, individually or cumulatively, on the physical, biological, and social components of the human environment (40 CFR 1508.8).

Plaintiff asserts that the relocation of the road will have a significant negative impact on the elk population in the area, but the record does not substantiate that assertion.

On the record before me, I conclude that the Ranger's decision to relocate a 1.5-mile segment of Lord Flat Road a short distance from the old segment and outside the wilderness area boundary was not arbitrary or capricious. Defendant's motion for summary judgment on plaintiff's first claim is, therefore, GRANTED and plaintiff's motion is DENIED.

## II. *Portion of Road Alleged to be Within Wilderness Area.*

In its complaint, plaintiff alleged that another portion of Lord Flat Road is located illegally within the wilderness area and must be closed. At the hearing on the parties' motions for summary judgment, plaintiff withdrew that claim. Accordingly, defendant's and plaintiff's motions for summary judgment on that claim are MOOT.

## CONCLUSION

Defendant's motion for summary judgment (# 10) on plaintiff's first claim is GRANTED. Plaintiff's motion for summary judgment (# 33) on that claim is DENIED. The parties' cross-motions for summary judgment on plaintiff's second claim are MOOT.